CHAMBERS *v.* BALTIMORE AND OHIO RAILROAD COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 22. Argued October 17, 18, 1907.—Decided November 18, 1907.

This court has jurisdiction to review the judgment on writ of error under § 709, Rev. Stat., if the opinion of the highest court of the State clearly shows that the Federal question was assumed to be in issue, was decided adversely, and the decision was essential to the judgment rendered.

The right to sue and defend in the courts of the States is one of the privileges and immunities comprehended by § 2 of Art. IV of the Constitution of the United States, and equality of treatment in regard thereto does not depend upon comity between the States, but is granted and protected by that provision in the Constitution; subject, however, to the restrictions of that instrument that the limitations imposed by a State must operate in the same way on its own citizens and on those of other States. The State's own policy may determine the jurisdiction of its courts and the character of the controversies which shall be heard therein.

The statute of Ohio of 1902 providing that no action can be maintained in the courts of that State for wrongful death occurring in another State except where the deceased was a citizen of Ohio, the restriction operating equally upon representatives of the deceased whether they are citizens of Ohio or of other States, does not violate the privilege and immunity provision of the Federal Constitution.

73 Ohio St. 1, affirmed.

THE facts are stated in the opinion.

· *Mr. Charles Koonce, Jr.,* with whom *Mr. R. B. Murray* and *Mr. W. S. Anderson* were on the brief, for plaintiff in error:

The right to maintain a transitory action by a citizen of one of the States of the United States, in the courts of a sister State, is one of the privileges and immunities comprehended by § 2 of Art. IV of the Constitution of the United States. *Corfield* v. *Coryell,* 4 Wash. C. C. 371–380; *Ward* v. *Maryland,* 12 Wall. 418, 430; *Cole* v. *Cunningham,* 133 U. S. 107–114; *Blake* v. *McClung,* 172 U. S. 239–256; *Moredock* v. *Kirby,* 118 Fed. Rep. 180–182; *Paul* v. *Virginia,* 8 Wall. 168–180; *Cofrode* v. *Gartner,* 79 Michigan, 332–343; *Railroad Co.* v. *Hendricks,* 41 Indiana, 48; *Schell* v. *Youngstown Sheet & Tube Co.,* 26 O. C. C. Reps. 209; *State* v. *Cadigan,* 73 Vermont, 245; *Hoadley* v. *Insurance Commissioners,* 37 Florida, 564; *S. C.,* 33 L. R. A. 388; *Roby* v. *Smith,* 131 Indiana, 342; *Shirk* v. *Lafayette* 52 Fed. Rep. 857; *Farmers' &c. Co.* v. *Railroad Co.,* 27 Fed. Rep. 146; *State* v. *Duckworth,* 5 Idaho, 642; *S. C.,* 39 L. R. A. 365.

While the doctrine of comity with reference to the maintenance of an action applies as between the citizens of different nations, and between the citizens of foreign nations and the several States of the United States, it is not the foundation upon which the citizens of the several States rest their right in invoking the courts of sister States. The foundation of that right is the privilege and immunity provision of the Federal Constitution and it is not within the power of either legislature or court to annul a constitutional right on the pretended theory that the right exists only in comity and is subject to the rules and principles governing comity rather than those which control constitutional guarantees.

The statute is not saved by the holding of the Supreme Court of Ohio that non-resident next of kin have equal rights, and the courts of Ohio are equally open to them, as to resident next of kin, provided only that the person whose wrongful death is the subject of action, was at the time of his death a citizen of Ohio.

The real purpose and effect of the act, as construed, was and

is to discriminate in favor of citizens of Ohio and against citizens of other States. Theoretical exceptions cannot save it from the ban of the constitutional provision herein in question.

The statute, as construed, is a denial of the right of the citizens of a sister State to have the cause of action resulting from the wrongful act enforced in favor of his wife and children.

The State of Ohio cannot forbid citizens of other States from suing in its courts, that right being enjoyed by its own people. *Eingartner* v. *Steel Company,* 94 Wisconsin, 70–78; *Blake* v. *McClung,* 172 U. S. 239–256.

In order that the statement that it is against the public policy of the State of Ohio to enforce in its courts a cause of action in favor of a citizen of another State can avail, it must first appear that it would be against the public policy of said State to enforce a like cause of action in favor of a citizen of its own State, or a like cause of action arising in its own State. The only qualification which can be attached to the right of such non-resident to maintain his action in the courts of a sister State is that the character of the cause of action must not be against the actual public policy of the State. And, to justify a court in refusing to enforce a right of action accruing under the laws of another State because against the policy of the laws of the forum, it must appear that it is against good morals or natural justice. *Huntington* v. *Attrill,* 146 U. S. 657, and cases there cited; *Stewart* v. *B. & O. R. R. Co.,* 168 U. S. 445; *Railroad Co.* v. *Rouse,* 178 Illinois, 132; *Railroad Company* v. *Babcock,* 154 U. S. 190; *Law* v. *Railroad Company,* 91 Fed. Rep. 817; *Davidow* v. *Railroad Company,* 85 Fed. Rep. 193; *Van Dorn* v. *Railroad Company,* 35 C. C. A. 282; *Wilson* v. *Tootle,* 55 Fed. Rep. 211; *Walsh* v. *Railroad Company,* 160 Massachusetts, 571; *Burns* v. *Railroad Company,* 113 Indiana, 169.

*Mr. George F. Arrel,* with whom *Mr. James P. Wilson* and *Mr. John G. Wilson* were on the brief, for defendant in error: This statute creates no discrimination between the citizens of Ohio and citizens of any other State. Under its provisions

it is only essential to the maintenance of the action to enforce the right in the courts of Ohio, that the decedent shall have been, at the time of his death, a citizen of Ohio. If the beneficiary under the statute of the State, giving the right, and in which the wrongful act took place, and the death resulted, happens to be a citizen of Ohio, the right secured by the statute could not be enforced in the courts of Ohio.

Unless an act of the state legislature in fact, and in some way discriminates as to the right in question between its citizens and citizens of another State, such act does not offend against this provision in the Federal Constitution. *Paul* v. *Virginia,* 8 Wall. 180; *Slaughter House Cases,* 16 Wall. 36.

True, the right to maintain the action in the courts of Ohio is made to depend in part upon the fact that the decedent at the time of his wrongful death was a citizen of Ohio, but such fact does not in any wise tend to show discrimination between or among beneficiaries, no matter where they may reside, or of what State or States they may be citizens. The act is open to no constitutional objection on the ground that it provides that an action may be maintained in the courts of Ohio for the wrongful death of one of its citizens, if the statutory law of the State in which he came to his death by wrongful act gives a right of such action. In other words, the act is free from objection in so far as it relates to the death of a citizen of Ohio. It is only objectionable, if at all, when applied to the maintenance of an action in the courts of Ohio for the wrongful death of a citizen of another State. It cannot be possible that by this provision of the Federal Constitution, the legislature of Ohio is inhibited from providing that where a citizen of another State meets his death by wrongful act in the State of which he is a citizen, that an action to recover compensation for his death cannot be maintained in the courts of Ohio.

The decision of the Supreme Court of Ohio herein clearly determines and establishes the public policy of the State of Ohio upon this subject, and this public policy, so determined and established, is clearly the result not only of legislative

enactment, but of judicial decision. This is clearly a subject upon which a State by its legislative and judicial departments may establish its own public policy. *Texas & Pacific Ry. Co.* v. *Cox,* 145 U. S. 829; *Stewart's Admr.* v. *B. & O. R. R. Co.,* 168 U. S. 445.

If, then, a foreign statute may not be enforced in a State whose policy is directly opposed to the policy of the State wherein the death occurred, under the doctrine of the *Stewart case* and other cases in this Supreme Court, no privilege or immunity has been denied to this citizen of the State of Pennsylvania.

MR. JUSTICE MOODY delivered the opinion of the court.

This is a writ of error directed to the Supreme Court of the State of Ohio. The plaintiff in error is the widow of Henry E. Chambers, who, while in the employ of the defendant in error as a locomotive engineer and engaged in the performance of his duty, received injuries from which he shortly afterwards died. Both husband and wife were at the time of the injuries and death citizens of Pennsylvania, and the wife has since continued to be such. The injuries and death occurred in Pennsylvania. The widow brought an action, in the Court of Common Pleas of the State of Ohio, against the defendant railroad, alleging that the injuries were caused by its negligence. In that action she sought to recover damages under certain parts of the Constitution and laws of Pennsylvania printed in the margin,[1] which provided for the recovery of damages

---

[1] Sections 18 and 19 of the act of April 15, 1851, are as follows, Pennsylvania Laws, 1851, p. 674: "SEC. 18. No action hereafter brought to recover damages for injuries to the person by negligence or default, shall abate by reason of the death of the plaintiff; but the personal representatives of the deceased may be substituted as plaintiff, and prosecute the suit to final judgment and satisfaction. SEC. 19. Whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured, during his or her life, the widow of any such deceased, or if there be no widow, the personal representatives, may maintain an action for and recover damages for the death thus occasioned."

for death.  The plaintiff had a verdict and judgment in the
Court of Common Pleas, from which, by petition in error, the
case was removed first to an intermediate court and then to
the Supreme Court of the State.  There it was insisted by the
defendant that the action could not be maintained in the
courts of Ohio.  The Supreme Court sustained this contention,
reversed the judgments of the court below, and entered judg-
ment for the defendant.  A statute of Ohio provided that
"whenever *the death of a citizen of this State* has been or may be
caused by a wrongful act, neglect or default in another State,
territory or foreign country, for which a right to maintain an
action and recover damages in respect thereof is given by a
statute of such other State, territory or foreign country, such
right of action may be enforced in this State within the time
prescribed for the commencement of such action by the stat-
ute of such other State, territory or foreign country."  There
was no other statutory provision on the subject.  The Supreme
Court held that the action authorized by this statute for a death
occurring in another State was only when the death was that
of a citizen of Ohio; that the common law of the State forbade
such action; and that as the person, for whose death damages
were demanded in this case, was not a citizen of Ohio, the ac-
tion would not lie.  The plaintiff brings the case here on writ
of error, alleging that the statute thus construed and the judg-

Sections 1 and 2 of the act of April 26, 1855, are as follows, Pennsylvania
Laws, 1856, p. 309: "Sec. 1.  The persons entitled to recover damages for
any injury causing death, shall be the husband, widow, children or parents
of the deceased, and no other relative, and the sum recovered shall go to
them in the proportion they take his or her personal estate in case of in-
testacy, and that without liability to creditors.  Sec. 2.  The declaration
shall state who are the parties entitled in such action; the action shall be
brought within one year after the death and not thereafter."  By section 21,
article III, of the constitution of the State of Pennsylvania of 1874, it is
provided as follows, to wit: "Sec. 21.  No act of the General Assembly shall
limit the amount to be recovered for injuries resulting in death, or for in-
juries to person or property, and in case of death from such injuries the right
of action shall survive, and the General Assembly shall prescribe for whose
benefit such actions shall be prosecuted."

ment based upon that construction violates Article IV, section 2, paragraph 1, of the Constitution of the United States, which provides that "The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." This allegation presents the only question for our consideration.

The defendant objects to our jurisdiction to reëxamine the judgment because the Federal question was not properly and seasonably raised in the courts of the State. But it clearly and unmistakably appears from the opinion of the Supreme Court that the Federal question was assumed to be in issue, was decided against the claim of Federal right, and that the decision of the question was essential to the judgment rendered. This is enough to give this court the authority to reëxamine that question on writ of error. *San José Land & Water Company* v. *San José Ranch Company*, 189 U. S. 177; *Haire* v. *Rice*, 204 U. S. 291.

In the decision of the merits of the case there are some fundamental principles which are of controlling effect. The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship, and must be allowed by each State to the citizens of all other States to the precise extent that it is allowed to its own citizens. Equality of treatment in this respect is not left to depend upon comity between the States, but is granted and protected by the Federal Constitution. *Corfield* v. *Coryell*, 4 Wash. C. C. 371, 380, per Washington, J.; *Ward* v. *Maryland*, 12 Wall. 418, 430, per Clifford, J.; *Cole* v. *Cunningham*, 133 U. S. 107, 114, per Fuller, C. J.; *Blake* v. *McClung*, 172 U. S. 239, 252, per Harlan, J.

But, subject to the restrictions of the Federal Constitution, the State may determine the limits of the jurisdiction of its courts, and the character of the controversies which shall be heard in them. The state policy decides whether and to what

extent the State will entertain in its courts transitory actions, where the causes of action have arisen in other jurisdictions. Different States may have different policies and the same State may have different policies at different times. But any policy the State may choose to adopt must operate in the same way on its own citizens and those of other States. The privileges which it affords to one class it must afford to the other. Any law by which privileges to begin actions in the courts are given to its own citizens and withheld from the citizens of other States is void, because in conflict with the supreme law of the land.

The law of Ohio must be brought to the test of these fundamental principles. It appears from the decision under review (and we need no other authority) that by the common law of the State the courts had no jurisdiction to entertain actions to recover damages for death where the cause of action arose under the laws of other States or countries. This rule was universal in its application. The citizenship of the persons who brought action or of the person for whose death a remedy was sought was immaterial. If the death was caused outside the State and the right of action arose under laws foreign to the State, its courts were impartially closed to all persons seeking a remedy, entirely irrespective of their citizenship. The common law, however, was modified by a statute which, as amended, became the statute under consideration here. By this statute the courts were given jurisdiction over certain actions of this description, while the common law was left to control all others. A discrimination was thus introduced into the law of the State. The discrimination was based solely on the citizenship of the deceased. The courts were open in such cases to plaintiffs who were citizens of other States if the deceased was a citizen of Ohio; they were closed to plaintiffs who were citizens of Ohio if the deceased was a citizen of another State. So far as the parties to the litigation are concerned, the State by its laws made no discrimination based on citizenship, and offered precisely the same privileges to citizens of

other States which it allowed to its own. There is, therefore, at least a literal conformity with the requirements of the Constitution.

But it may be urged, on the other hand, that the conformity is only superficial; that the death action may be given by the foreign law to the person killed, at the instant when he was *vivus et mortuus*, and made to survive and pass to his representatives (*Higgins* v. *Railroad*, 155 Massachusetts, 176); that in such cases it is the right of action of the deceased which is brought into court by those who have it by survivorship; and that, as the test of jurisdiction is the citizenship of the person in whom the right of action was originally vested, and the action is entertained if that person was a citizen of Ohio and declined if he was a citizen of another State, there is in a real and substantial sense a discrimination forbidden by the Constitution.

If such a case should arise, and be denied hearing in the Ohio courts by the Ohio law, then as the denial would be based upon the citizenship of that person in whom the right of action originally vested, it might be necessary to consider whether the Ohio law did not in substance grant privileges to Ohio citizens which it withheld from citizens of other States. But no such case is before us. The Pennsylvania statute, which created the right of action sought to be enforced in the Ohio courts, has been construed by the courts of Pennsylvania. The applicable section is section 19 of the act of 1851. Of it the Pennsylvania court said in *Fink* v. *Garman*. 40 Pa. St. 95, 103:

"The 18th section was apparently intended to regulate a common law right of action, by securing to it survivorship; but the 19th section was creative of a new cause of action, wholly unknown to the common law. And the right of action was not given to the person suffering the injury, since no man could sue for his own death, but to his widow or personal representative. It was not survivorship of the cause of action which the legislature meant to provide for by this section, but

the creation of an original cause of action in favor of a surviving widow or personal representative."

This is the settled interpretation of the act. *Mann* v. *Weiand* 81½ Pa. St. 243; *Pennsylvania Railroad* v. *Bock*, 93 Pa. St. 427; *Engle's Estate*, 21 Pa. C. C. 299; *McCafferty* v. *Pennsylvania Railroad*, 193 Pa. St. 339. It appears clearly, therefore, that the cause of action which the plaintiff sought to enforce was one created for her benefit and vested originally in her. She has not been denied access to the Ohio courts because she is not a citizen of that State, but because the cause of action which she presents is not cognizable in those courts. She would have been denied hearing of the same cause for the same reason if she had been a citizen of Ohio. In excluding her cause of action from the courts the law of Ohio has not been influenced by her citizenship, which is regarded as immaterial. We are unable to see that in this case the plaintiff has been refused any right which the Constitution of the United States confers upon her, and accordingly the judgment is

*Affirmed.*

MR. JUSTICE HOLMES, concurring.

Although I do not dissent from the reasoning of the judgment, I prefer to rest my agreement on the proposition that if the statute cannot operate as it purports to operate it does not operate at all. I do not think that it can be presumed to mean to give to all persons a right to sue in case the Constitution forbids it to make the more limited grant that it attempts. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 565. Apart from the statute no one can maintain an action like this in Ohio. I may add that I do not understand that there is anything in the judgment that contradicts my opinion as to the law.

MR. JUSTICE HARLAN (with whom concurred MR. JUSTICE WHITE and MR. JUSTICE McKENNA), dissenting.

The plaintiff in error, Elizabeth M. Chambers, a citizen of Pennsylvania, sought by this action against the Baltimore and

Ohio Railroad Company in the Common Pleas Court of Mahoning County, Ohio, to recover damages on account of her husband's death in Pennsylvania in 1902—his death having been caused, it was alleged, by the negligence of the defendant railroad company while operating a part of its line in Pennsylvania. The railroad company was brought into court by due service of summons, and there was a trial resulting in a verdict and judgment in favor of the plaintiff for three thousand dollars. The case was carried upon writ of error to the Circuit Court of Mahoning County and the judgment was there affirmed. That judgment of affirmance was reversed by the Supreme Court of Ohio with directions to enter judgment for the railroad company.

That the laws of Pennsylvania give a right of action, in favor of the widow of a deceased whose death is "occasioned by unlawful violence or negligence," is not disputed. It is equally clear that the present plaintiff's cause of action is not local but is transitory in its nature, and, speaking generally, can be maintained in any jurisdiction where the wrongdoer may be found and be brought before the court. *Dennick* v. *Railroad Company*, 103 U. S. 11; *Stewart* v. *B. & O. R. R. Co.*, 168 U. S. 445.

By a statute of Ohio (1902) in force when this action was brought, it was provided that "whenever the death of a citizen of this State has been or may be caused by a wrongful act, neglect or default in another State, territory or foreign country, for which a right to maintain an action and recover damages in respect thereof is given by a statute of such other State, territory, or foreign country, such right of action may be enforced in this State within the time prescribed for the commencement of such action by the statute of such other State, territory or foreign country." 95 O. L. 401. By a previous statute (1894) suits of that kind were allowed in Ohio when death was caused by a wrongful act, negligence or default in another State if such suits were allowed in the State where the death occurred. But that statute, as stated by the court in this case, was repealed by the above act of 1902. So that the

court, in the present case, held that the act of 1902 changed the former law in two essential particulars: "1. It dispenses with the condition that the State in which the wrongful death occurs shall enforce in its courts the statute of this State of like character.   2. It in terms limits the right therein given to maintain an action in this State for wrongful death occurring in another State, to actions for causing the death of *citizens* of Ohio, whereas the original section 6134a gave such right without limitation or restriction as to citizenship." Again, the court said: "Having regard then to the scope and effect of the provisions of the section amended, and to the special character of the amendments made, we think it clear that the legislature, by the adoption of amended section 6134a [the act of 1902], undertook and intended thereby to limit and restrict the right to recover in the courts of this State for a wrongful death occurring in another State, to those cases where the person killed was, at the time of his death, a citizen of Ohio." That there may be no mistake as to the decision, I quote the official syllabus of the present case which, by the law of Ohio, is to be taken as indicating the point actually in judgment: "No action can be maintained in the courts of this State upon a cause of action for wrongful death occurring in another State, *except* where the person wrongfully killed was a *citizen of the State of Ohio.*"   73 Ohio St. 1.

It thus appears that the final judgment in this case for the railroad company rests upon the distinct ground that the courts of Ohio cannot, under the statute of that State, take cognizance of an action for damages, on account of death occurring in another State and caused by wrongful act, neglect or default, *except* where the person wrongfully killed was a citizen of Ohio.   In that view, if two persons, one a citizen of Ohio and the other a citizen of Pennsylvania, traveling together on a railroad in Pennsylvania, should both be killed at the same moment and under precisely the same circumstances, in consequence of the negligence or default of the railroad company, the courts of Ohio are closed, by its statute against any suit

for damages brought by the widow or the estate of the citizen
of Pennsylvania against the railroad company, but will be open
to suit by the widow or the estate of the deceased citizen of
Ohio, although by the laws of the State where the death oc-
curred the widow or estate of each decedent would have in the
latter State a valid cause of action.

Is a state enactment, having such effect, repugnant to the
clause of the Federal Constitution, Art. 4, § 2, which declares
that "the citizens of each State shall be entitled to all privi-
leges and immunities of citizens in the several States?" Will
not that constitutional guaranty be shorn of much of its value
if any State can reserve either for its own citizens, or for the
estates of its citizens, privileges and immunities which, even
where the facts are the same, it denies to citizens or to the
estates of citizens of other States?

It is not necessary to fully enumerate the privileges and
immunities secured against hostile discrimination by the con-
stitutional provision in question. All agree that among such
privileges and immunities are those which, under our institu-
tions, are fundamental in their nature. I cordially assent to
what is said upon this point in the opinion just delivered for
the majority of the court. The opinion says: "In the decision
of the merits of the case there are some fundamental princi-
ples which are of controlling effect. The right to sue and de-
fend in the courts is the alternative of force. In an organized
society it is the right conservative of all other rights, and lies
at the foundation of orderly government. It is one of the
highest and most essential privileges of citizenship, and must
be allowed by each State to the citizens of all other States
to the precise extent that it is allowed to its own citizens.
Equality of treatment in this respect is not left to depend upon
comity between the States, but is granted and protected by the
Federal Constitution. . . . The privileges which it [the
State] affords to one class it must afford to the other. Any
law by which privileges to begin actions in the courts are given
to its own citizens and withheld from the citizens of other

States is void, because in conflict with the supreme law of the land."

These views are supported by the former decisions of this and other courts. In the leading case of *Corfield* v. *Coryell*, 4 Wash. C. C. 571, 580, Mr. Justice Washington said: "The inquiry is what are the privileges and immunities of citizens in the several States? We feel no hesitation in confining these expressions to those privileges and immunities which are, in their nature, fundamental, which belong. of right, to the citizens of all free governments, and which have, at all times, been enjoyed by the citizens of the several States which compose this Union from the time of their becoming free, independent and sovereign. What these fundamental principles are it would perhaps be more tedious than difficult to enumerate." Among the particular privileges and immunities which are clearly to be deemed fundamental, the court in that case specifies the right " *to institute and maintain actions of any kind in the courts of the State.*"

In *Paul* v. *Virginia*, 8 Wall. 168, 180, the court, speaking by Mr. Justice Field, said: "It was undoubtedly the object of the clause in question [Const. Art. 4, § 2] to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States; it gives them the right of free ingress into other States, and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other States the equal protection of their laws. It has been justly said that no provision in the Constitution has tended so strongly to constitute the citizens of the United States one people as this. Indeed, without some provision of the kind removing from the citizens of each State the disabilities of alienage in the other States, and giving them equality of privilege with citizens of

those States, the Republic would have constituted little more than a league of States; it would not have constituted the Union which now exists."

So, in *Ward* v. *Maryland*, 12 Wall. 418, 430, the court, after referring to *Corfield* v. *Coryell*, above cited, and, speaking by Mr. Justice Clifford, stated that the right "to maintain actions in the courts of the State" was fundamental and was protected by the constitutional clause in question against state enactments that discriminated against citizens of other States.

Referring to the cases just cited, and to the constitutional clause in question, Mr. Justice Miller, speaking for the court in the *Slaughter-House Cases*, 16 Wall. 36, 77, said: "Its sole purpose was to declare to the several States, that whatever those rights, as you grant or establish them to your own citizens, or as you limit or qualify, or impose restrictions on their exercise, the same, neither more nor less, shall be the measure of the rights of citizens of other States within your jurisdiction."

In *Cole* v. *Cunningham*, 133 U. S. 107, 114, the present Chief Justice, speaking for the court, said: "The intention of section 2 of Article IV was to confer on the citizens of the several States a general citizenship, and to communicate all the privileges and immunities which the citizens of the same State would be entitled to under the like circumstances, *and this includes the right to institute actions.*"

In the more recent case of *Blake* v. *McClung*, 172 U. S. 239, 256, the court said: "We must not be understood as saying that a citizen of one State is entitled to enjoy in another State *every* privilege that may be given in the latter to its own citizens. There are privileges that may be accorded by a State to its own people in which citizens of other States may not participate except in conformity to such reasonable regulations as may be established by the State. *For instance, a State cannot forbid citizens of other States from suing in its courts, that right being enjoyed by its own people;* but it may require a nonresident, although a citizen of another State, to give bond for costs, although such bond be not required of a resident. Such

a regulation of the internal affairs of a State cannot reasonably be characterized as hostile to the fundamental rights of citizens of other States. . . . The Constitution forbids only such legislation affecting citizens of the respective States as will substantially or practically put a citizen of one State in a condition of alienage when he is within or when he removes to another State, or when asserting in another State the rights that commonly appertain to those who are part of the political community known as the People of the United States, by and for whom the Government of the Union was ordained and established."

These cases, I think, require the reversal of the judgment of the Supreme Court upon the ground that it denies to the plaintiff a right secured by the Constitution of the United States. The statute of Ohio, we have seen, closes the doors of the courts of that State against the present plaintiff alone because her deceased husband was not at the time of his death a citizen of Ohio. Thus, every citizen of Ohio, when in another State, for whatever purpose, is accompanied by the assurance on the part of his State that its courts will be open for suit by his widow or representative if his death, while in another State, is caused by the negligence or default of another person or company. But that privilege is denied by the Ohio statute to the representative of citizens of other States meeting death under like circumstances. Indeed, if a citizen of Ohio should go into another State and while there *willfully*, or by some wrongful act, neglect or default on his part, cause the death of some one, although he might be liable to a suit for damages in the State where death occurred, yet if sued for damages in the courts of his own State, he need only plead in bar of the action in Ohio that the decedent was not, at the time of his death, a citizen of Ohio. Such, it seems to me, is the operation of the statute of Ohio as it is interpreted by the court below.

The Supreme Court of Ohio, it will be observed, does not base its judgment upon any common law of the State apart from its statutes. It says: "From a consideration of the statutes

hereinbefore referred to, and the former·decisions of this court, we think it must now be held to be the recognized policy and established law of this State, that an action for wrongful death occurring in another State, will not be enforced in the courts of this State, *except* where the person killed was, at the time of his death, a citizen of Ohio." It places its judgment on its statutes and judicial decisions, which it regards as together indicating the policy and law of the State to be such as to preclude an action for damages, except where the deceased was a citizen of Ohio. That exception, upon whatever basis it may be rested, must fall before the Constitution of the United States and be treated as a nullity. The denial to the widow or representative of Chambers of the right to sue in Ohio upon the ground that he was not a citizen of Ohio when killed was the denial, in every essential sense, of a fundamental privilege belonging to him under the Constitution in virtue of his being a citizen of one of the States of the Union—the right to sue and defend in the courts of justice, which right this court concedes to be "one of the highest and most essential privileges of citizenship." While in life Chambers enjoyed the right—and it was a most valuable right—of such protection as came from the rule established in Pennsylvania, that, in case of his death in consequence of the negligence of others, the wrong done to the deceased in his lifetime could be remedied by means of suit brought in the name and for the benefit of his widow or personal representative. But Ohio takes this right of protection from him; for, the Ohio court would have taken cognizance of this action if the decedent Chambers had been, when killed, a citizen of Ohio, while it denies relief to his widow, and puts her out of court solely because her husband was, when killed, a citizen of another State. It thus accords to the Ohio widow of a deceased Ohio citizen a privilege which it withholds from the Pennsylvania widow of a deceased Pennsylvania citizen. If the statutes of Ohio had excluded from the jurisdiction of the courts of that State *all* actions for damages on account of death a different question would be presented. But that is

not what Ohio has assumed to do. As already shown, it allows suits for damages like the present one, where the death occurred in another State, *provided the deceased was a citizen of Ohio, but prohibits them where he was a citizen of some other State.* The final judgment in this case therefore denies a fundamental right inhering in citizenship, and protected by section 2 of Article IV of the Constitution. The Constitution is the supreme law of the land. But it would not be supreme if any right given by it could be overridden either by state enactment or by judicial decision. In *Higgins* v. *Central New Eng. &c. Railroad,* 155 Massachusetts, 176, 180, the Supreme Judicial Court of Massachusetts, after referring to transitory causes of action which did not exist at common law, but were created by the statute of another State and passed to the administrator of the deceased, said: "When an action is brought upon it here, the plaintiff is not met by any difficulty upon these points. Whether our courts will entertain it depends upon the general principles which are to be applied in determining the question whether actions founded upon the laws of other States shall be heard here. These principles require that, in case of other than penal actions, the foreign law, if not contrary to our public policy, or to abstract justice or pure morals, or calculated to injure the State or its citizens, shall be recognized and enforced here, if we have jurisdiction of all necessary parties, and if we can see that, consistently with our own forms of procedure and law of trials, we can do substantial justice between the parties." The statute of Pennsyvania which gave the plaintiff as widow of the deceased a right to sue for damages does not offend natural justice or good morals, nor is it calculated to injure the citizens of any State, not even those of Ohio, nor can it be said to offend any policy of that State which has been made applicable equally to its own citizens and citizens of other States. The case is plainly one in which Ohio attempts, in reference to certain kinds of actions that are maintainable in perhaps every State of the Union, including Ohio, to give to its own citizens privileges which it denies, under like circumstances,

to citizens of other States. To a citizen of Ohio it says: "If you go into Pennsylvania, and are killed while there, in consequence of the negligence or default of some one, your widow may have access to the Ohio courts in a suit for damages, provided the wrongdoer can be reached in Ohio by service of process." But to the citizen of Pennsylvania it says: "If you come to your death in that State by reason of the negligence or default of some one, *even if the wrongdoer be a citizen of Ohio,* your widow shall not sue the Ohio wrongdoer in an Ohio court for damages because, and only because, you are a citizen of another State." This is an illegal discrimination against living citizens of other States, and the difficulty is not met by the suggestion that no discrimination is made against the widow of the deceased because of *her* citizenship in another State. The statute of Pennsylvania in question had in view the protection of persons, while alive, against negligence or default causing death. It must have had that object in view. I submit that no State can authorize its courts to deny or disregard the constitutional guaranty that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States.

With entire respect for the views of others, I am constrained to say that, in my opinion, so much of the local law, whether statutory or otherwise, as permits suits of this kind for damages, where the deceased was a citizen of Ohio, but forbids such suits where the deceased was not a citizen of Ohio, is unconstitutional. The judgment under review should be reversed.