OPINION OF THE COURT
John R. Tenney, J.
Robert Smithson was discharged from his position as executive director of the Ilion Housing Authority. There was no hearing, and no specific reasons were given for his dismissal. He brings this CPLR article 78 proceeding to restrain the commissioners of the Authority from carrying out the resolution of December 11, 1985. He contends that the attempts to remove him are illegal because he is a public officer, and that the reasons behind the action are unconstitutional.
One of the grounds which form the basis for his removal is the fact that Smithson had brought a lawsuit against Melvin Sitterly, a commissioner, charging him with defamation. The claim arises from certain comments allegedly made by Mr. Sitterly with reference to Smithson’s performance of his offi *401 cial duties. There are many other reasons alleged for the discharge, but for this proceeding, the court will only consider the lawsuit.
Petitioner agrees that he is an employee at will, that he is not protected by any statutes, and that he serves at the pleasure of the board. (Murphy v American Home Prods. Corp., 58 NY2d 293; Matter of Tyson v Hess, 109 AD2d 1068.) He argues that to remove him because he instituted a lawsuit is "constitutionally impermissible”, protected under the right of free speech and is not a proper ground for discharge, citing Chambers v Baltimore & Ohio R. R. (207 US 142).
The alleged "false and defamatory words” uttered by Sitterly occurred on or about November 12, 1984, following the discovery of a shortage of Authority funds received from the P & C Market. The suit was started many months before the December 11 meeting when the board decided to terminate Smithson. The commissioners allege that there are many reasons for their action including the lawsuit.
Smithson argues that his quarrel is not with the board but just with an individual and that a lawsuit against Sitterly is not against his employer. (There are also misconduct charges leveled at another board member.) Sitterly is one of the commissioners and, as such, has to be classified as an employer.
If Mr. Smithson feels aggrieved by a member of the board, his proper remedy is to approach the board and seek its support. If he is not successful, then his position becomes untenable since he must serve at its pleasure. To go outside the board and seek redress in the courts can be a form of coercion to intimidate a board member and restrain him from performing his duties. If a chief executive officer creates an adversarial position with the board, there is a probable conflict of interest and proper administration becomes limited, if not impossible.
Under the circumstances, Mr. Smithson must make a choice. If he wishes to continue to serve on the board, he cannot be an adversary of the board. It is impossible to separate the private feud from his relationship with the board.
Petitioner does not allege, nor could he, that he has a constitutionally protected property interest in continued public employment. (Bishop v Wood, 426 US 341; Board of Regents v Roth, 408 US 564.) Petitioner also cannot successfully *402 state a cause of action for retaliatory discharge based on the fact that he attempted to "blow the whistle” on allegedly improper conduct by certain commissioners. Even if true, such "retaliatory firing is [not] against public policy, [and] is not actionable under New York law” (Edwards v Citibank, 100 Misc 2d 59, 61, affd 74 AD2d 553, appeal dismissed 51 NY2d 875; see also, Wegman v Dairylea Coop., 50 AD2d 108).
"In Mount Healthy City Bd. of Educ. v Doyle (424 US 274), the United States Supreme Court set forth a three-part test for determining whether an employee was dismissed for constitutionally impermissible reasons * * * First, the employee must establish that [his] conduct was constitutionally protected * * * Next, the employee must show that this conduct was a substantial factor in the decision [to fire him] * * * Finally, if the employee carries the above burden, then the [employer] must show by a preponderance of the evidence that it would have dismissed the employee even in the absence of the [constitutionally impermissible purpose]” (Matter of Forrest v Ambach, 93 AD2d 965). In this case, petitioner has failed to establish the first part of the test. He relies on Chambers v Baltimore & Ohio R. R. (207 US 142, 148, supra) wherein the court states: "The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship”.
Chambers held that a State may not arbitrarily restrict access to the court to only certain classes of people since equal protection itself is constitutionally protected. (See, Boddie v Connecticut, 401 US 371 [filing fees for indigent divorce plaintiffs held unconstitutional since they interfered with the fundamental interest of marital status]; Griffin v Illinois, 351 US 12 [filing fees void where they prohibit access to the appellate courts].) There is no question raised regarding Smithson’s right to bring the suit. The issue is whether the use of the right entitles him to immunity.
He is immune if the benefit derived from the use of the court system is to protect or assert a constitutionally protected property interest. In Board of Regents v Roth (408 US 564, 577, supra) the court outlined the elements required: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.”
*403 The terms of Smithson’s appointment secured absolutely no interest in reemployment — no possible claim of entitlement to reemployment — he did not have a property interest sufficient to even require a hearing. There must be a showing that he was deprived of liberty of property protected by the 14th Amendment. "Property interests * * * are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law” (supra, p 577).
Therefore, "[w]here access to the judicial process is not essential to the exercise of fundamental constitutional rights the state will be free to allocate access to the judicial machinery on any system or classification which is not totally arbitrary” (Nowak, Rotunda and Young, Constitutional Law, ch 15, § IV, at 581 [2d ed]; see also, United States v Kras, 409 US 434). Access to the courts by itself is not constitutionally protected. Access to the courts to preserve a fundamental right within the scope of the 1st and 14th Amendments is protected.
Since petitioner has no fundamental constitutional right or State law authorizing continued employment (Murphy v American Home Prods. Corp., 58 NY2d 293, supra) he has shown no prohibited interference with his access to the courts.
Therefore, the petition is dismissed.