Sally Ann VALOT, et al., Plaintiffs,

v.

SOUTHEAST LOCAL SCHOOL DISTRICT, et al., Defendants.

No. 5:94–CV–0399.

United States District Court, N.D. Ohio, Eastern Division.

Feb. 28, 1995.

Ira J. Mirkin, Bonnie Deutsch Burdman, Green, Haines, Sgambati, Murphy & Macala, Youngstown, OH, for Sally Ann Valot, Jean Hansen, Anna D. Roosa.

Michael J. Loughman, David K. Smith, Warhola, O'Toole, Loughman, Alderman & Stumphauzer, Lorain, OH, G. Frederic Compton, Jr., Whalen & Compton, Akron, OH, for Southeast Local School Dist., Bd. of Educ., Kelly Westover, David Pettigrew, Charles Honeck, Russell McKenzie, Robert Hedrick, Terry P. Byers.

### MEMORANDUM & ORDER

O'MALLEY, District Judge.

Plaintiffs Sally Ann Valot, Jean Hansen and Anna Roosa bring this action against defendant the Southeast Local School District Board of Education ("School Board"), as well as several of the School Board's officers

and members.[1] Plaintiffs claim that the School Board's refusal to rehire them as bus drivers was a violation of their rights under the United States Constitution, as well as a tortious violation of the public policy of the State of Ohio.

Defendants have moved for summary judgment on all counts of the complaint (docket no. 22), and plaintiffs have filed a cross motion for partial summary judgment on the issue of liability (docket no. 25). Because the Court finds that defendants' motion is well taken, defendants' motion for summary judgment (docket no. 22) is GRANTED and plaintiffs' cross motion (docket no. 25) is DENIED.

## I.

The parties agree that the following material facts in this case are not in dispute. Prior to the summer of 1993, plaintiffs Valot, Hansen and Roosa all served as substitute school bus drivers for the School Board for three or more years. Plaintiffs were employed pursuant to consecutive nine-month contracts, tendered to them by the School Board at the beginning of each school year. Plaintiffs were not employed during the summer months.

As a matter of practice, the School Board voted at the end of each school year not to automatically renew its substitute bus drivers' contracts. Instead, the School Board informed its substitute bus drivers that if they wished to work as bus drivers during the next school year, they should notify their supervisor. Their supervisor would relay this information to the school Superintendent, who would make recommendations to the School Board. The School Board would then vote on whether it desired to tender contracts to those substitute bus drivers whom the Superintendent recommended. The School Board virtually always accepted the Superintendent's recommendations.

Each year before the 1993–94 school year, all plaintiffs consistently: (1) notified their supervisor that they wished to be rehired; (2) received a recommendation from the Superintendent that they be rehired; and (3) were in fact rehired as substitute bus drivers. As they had before, all plaintiffs gave notification to their supervisor at the end of the 1992–93 school year that they wished to be rehired for the 1993–94 school year.

Before the summer of 1993, none of the plaintiffs had ever applied for unemployment benefits during the summer months, while they were unemployed. Apparently, no other substitute bus drivers besides plaintiffs had ever applied for unemployment benefits during the summer either. Near the end of the 1992–93 school year, however, plaintiff Valot learned that a substitute bus driver working for a different school system had collected unemployment benefits during the summer months. Valot relayed this information to Hansen, Roosa, and other substitute bus drivers. Valot also learned, however, that another substitute bus driver employed by the School Board had once been warned to relinquish an existing unemployment claim, or lose her job. Plaintiffs thus became concerned that they might jeopardize their own rehiring if they filed a claim for unemployment benefits over the summer. Plaintiffs asked their supervisor for advice, and their supervisor suggested that plaintiffs speak with defendant Byers, the superintendent of the Southeast School System.

Plaintiffs met with Byers in June of 1993. Plaintiffs stated to Byers that they were thinking of applying for unemployment benefits, but wanted to know if doing so would jeopardize their rehiring. Byers responded that he expected to recommend to the School Board that they be rehired, but that he could not predict what the School Board would do. Byers added that the School Board normally followed his recommendations. Plaintiffs thereafter applied for, and received, unemployment benefits.

On August 16, 1993, the School Board met to consider, among other things, which sub-

---

**1.** The other defendants named in this action are Kelly Westover, David Pettigrew, Charles Honeck, Russell McKenzie, Robert Hedrick, and Terry Byers. All of these individuals are School Board members except Byers, who is the South-

east Local School District Superintendent. As used in this memorandum, the term "School Board" refers to all defendants, except where otherwise indicated.

stitute bus drivers to rehire for the upcoming school year. Prior to the meeting, defendant Byers submitted a list of his recommendations to the School Board members. This list originally included plaintiffs. It was made known at the meeting, however, that plaintiffs had applied for and collected unemployment benefits during the summer of 1993. This fact was notable to the School Board because the School Board does not pay money into the State of Ohio's unemployment fund; as a result, the School Board, itself, pays for any ex-employee's unemployment benefits "dollar for dollar."

The School Board was unhappy that it had been forced to make unemployment payments for the benefit of plaintiffs. For this reason, the School Board decided not to rehire plaintiffs. Byers crossed plaintiffs' names off of his list of recommended substitute bus drivers, and the School Board then voted to rehire all of the individuals whose names remained on the list. Defendants candidly admit, under oath, that the only reason the School Board did not rehire plaintiffs for the 1993–94 school year was because plaintiffs had filed for unemployment benefits. Deposition testimony describing the School Board's August 16, 1993 meeting makes it clear that plaintiffs' receipt of unemployment benefits was the sole factor motivating the School Board not to rehire plaintiffs.

When plaintiffs learned that they had not been rehired, they personally contacted the School Board to learn why. The School Board told plaintiffs they had not been hired because they had sought and obtained unemployment benefits, the receipt of which translated into loss of the School Board's own revenue. Plaintiffs offered to repay to the School Board the benefits that they had received in exchange for being allowed to return to their jobs. The School Board refused this offer.

Plaintiffs then filed this lawsuit. In Counts I through IV, plaintiffs claim that

defendants violated various of their constitutional rights under color of state law, in violation of 42 U.S.C. § 1983.[2] In Count V, plaintiffs add that defendants tortiously violated the public policy of Ohio. Given that the material facts are not in dispute, it is up to the Court to decide whether plaintiffs' claims succeed as a matter of law.

## II.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

---

**2.** Specifically, plaintiffs claim that defendants violated the following: (Count I) the right to petition for redress of grievances, secured by the First Amendment; (Count II) the right of access to administrative agencies, secured by the privileges and immunities clause of Article IV and the Fourteenth Amendment; (Count III) the right to equal protection of the laws, secured under the Fourteenth Amendment; and (Count IV) the right to due process of law, secured by the Fourteenth Amendment.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III.

Plaintiffs argue that, although they may not have had an absolute right to be rehired, "they had an entitlement not to be denied rehire for an unconstitutional reason." Response Brief at 1. This assertion is generally true. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (failure to rehire non-tenured teacher in retaliation for teacher's exercise of First Amendment right to publicly criticize school administration was unconstitutional); *Perry v. Sindermann*, 408 U.S. 593, 598, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972) (nonrenewal of non-tenured teacher's annual contract in retaliation for teacher's exercise of First Amendment right to criticize school policy was unconstitutional); *Adkins v. Bd. of Educ. of Magoffin County* 982 F.2d 952, 955 (6th Cir.1993) (firing of non-tenured school secretary because she was married to tenured school principal, who could not be fired, violated secretary's First Amendment right to associate with whom she pleased).

Plaintiffs assert that the School Board's reason for not rehiring them—a retaliation for having sought unemployment compensation benefits—was unconstitutional. Plaintiffs fail to articulate a clear constitutional right of which they have been deprived, however.

Plaintiffs first assert that the School Board's refusal to rehire them infringed upon their constitutional right to petition the government for redress of grievances and their right of access to the courts. It is certainly true that "[t]he right to sue and defend in the courts ... is the right conservative of all other rights, and lies at the foundation of orderly government, It is one of the highest and most essential privileges of citizenship." *Chambers v. Baltimore & Ohio Railroad Co.*, 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907). It is also true that it is unconstitutional for a state official to "take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future." *Harri-*

*son v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1428 (8th Cir.1986); *Graham v. Nat'l Collegiate Athletic Ass'n,* 804 F.2d 953, 959 (6th Cir.1986). And it is established that the right of access to *courts* to pursue grievances extends to include the right of access to administrative agencies. *Franco v. Kelly* 854 F.2d 584, 589 (2d Cir.1988) ("the right of petition applies with equal force to a person's right to seek redress from all branches of government.... In the prison context, we have held that inmates must be 'permitted free and uninhibited access ... to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers.'") (emphasis in original; citations omitted).

This law, however, is not helpful to plaintiffs. In this case, plaintiffs never sought access to any court or administrative agency *to redress a wrong or an injustice,* or to otherwise pursue a *grievance.* Rather, they only sought access to a state agency in order to *obtain benefits* due persons who meet certain objective criteria. Any retaliatory action taken by the School Board against the plaintiffs for having sought unemployment compensation benefits did not chill plaintiffs' ability to petition the government for redress of grievances.

■ Plaintiffs next assert that the School Board's retaliatory action violated their right to equal protection of the laws, guaranteed by the Fourteenth Amendment. Plaintiffs claim that the School board treated one class of individuals—substitute bus drivers who applied for and collected unemployment compensation—differently than they treated individuals outside the class. This argument fails because, to the extent the School Board did treat this class differently, the different treatment was not unconstitutional.

The class that plaintiffs complain was treated disparately by the School Board is not different from members outside of the class based on gender, race, alienage, or national origin. Accordingly, the School Board's action "is presumed to be valid and will be sustained if the classification drawn ... is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Here, the School Board had a legitimate interest in protecting the funds used to operate the school system. The School Board's actions were rational, being directed toward protecting those funds from depletion by employees claiming regular, short-term episodes of unemployment. Furthermore, it is not insignificant that the discrete class plaintiffs single out as having been unfairly treated is a class of persons who obtained unemployment compensation benefits to which they apparently were not entitled.[3]

Because the School Board's actions toward the discrete class of individuals identified by plaintiffs was rational, plaintiffs' claim that they were denied equal protection fails.

■ In addition to their claims that the School Board violated their constitutional rights, plaintiffs assert that the School Board tortiously violated the public policy of the state of Ohio. However, subject matter jurisdiction in this case was based on the existence of a federal question. This Court had jurisdiction over plaintiffs' state law claim only because it is so related to their federal law claims that they are part of the same case or controversy. 28 U.S.C. § 1367(a) (defining the court's "supplemental" jurisdiction). Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if the federal claims over which it had original jurisdiction have all

**3.** Ohio Rev.Code § 4141.29(I)(1)(b) states that unemployment compensation benefits for individuals (like plaintiffs) who work for a school in a non-teaching and non-administrative position *shall not be paid to any individual* for any week of unemployment which begins during the period between two successive academic years or terms of the employing educational institution ... provided the individual performed such services for the educational institution ... dur-

ing the first such academic year or term and, *there is a reasonable assurance that such individual will perform such services for any educational institution ... in the second of such academic years or terms.* (Emphasis added). In essence, in refusing to rehire plaintiffs, the School Board merely fulfilled the expectations of future employment plaintiffs intimated were theirs when they sought to qualify for unemployment benefits.

been dismissed. "[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Williams v. City of River Rouge*, 909 F.2d 151, 157 (6th Cir.1990). Accordingly, this Court, in its discretion, dismisses plaintiffs' supplemental state law claim, without prejudice, for lack of a substantial federal claim.

## IV.

In summary, the material facts in this case are not in dispute, and defendants are entitled to judgment as a matter of law. Because the Court finds that defendants' motion for summary judgment is well taken, defendants' motion for summary judgment (docket no. 22 ) is GRANTED and plaintiffs' cross motion (docket no. 25) is DENIED.

**IT IS SO ORDERED.**