Ronald WEAVER, et al., Plaintiffs,

v.

Raymond TOOMBS, et al., Defendants.

No. G89–50398–CA.

United States District Court,
W.D. Michigan, S.D.

Dec. 5, 1989.

Ronald Weaver, pro se.

Leo McKaye, pro se.

Morris Martin, pro se.

Jason Julian, Asst. Atty. Gen., Corrections Div., Lansing, Mich., for defendants.

## OPINION

ROBERT HOLMES BELL, District Judge.

This is a civil rights action brought by three state prisoners pursuant to 42 U.S.C. § 1983. Plaintiffs' *pro se* complaint arises out of an incident that transpired at the Ionia Maximum Correctional Facility (IMCF). Defendants are three officials of IMCF, the Warden of IMCF, and the Director of the Department of Corrections. Plaintiffs allege that defendants violated plaintiffs' constitutional rights by intercepting, censoring, and confiscating legal materials sent by two of the plaintiffs to the third. Prison officials confiscated the materials because plaintiffs had no "jailhouse lawyer" agreement. Plaintiffs desire $100,000 in damages for the mental anguish and emotional distress they have experienced.

Defendants have filed a motion to dismiss the complaint, Fed.R.Civ.P. 12(b)(6), and plaintiffs have filed a response. Motions to dismiss *pro se* civil rights complaints must be scrutinized with special care. The role of the federal courts is to protect and vindicate constitutional rights, not to impose stringent pleading requirements on *pro se* litigants. The Sixth Circuit has summarized the standards this court must apply in ruling upon defendants' motion to dismiss.

> [The] court must construe the complaint liberally in plaintiff's favor and accept as true all factual allegations and permissible inferences therein. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). Dismissals of complaints filed under the civil rights statutes are scrutinized with special care, *Brooks v. Seiter,* 779 F.2d 1177, 1180 (6th Cir.1985), and *pro se* complaints are held to even "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 [92 S.Ct. 594, 596, 30 L.Ed.2d 652] (1972). In the final analysis, a Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 [78 S.Ct. 99, 101–02, 2 L.Ed.2d 80] (1957).

*Kent v. Johnson,* 821 F.2d 1220, 1223–24 (6th Cir.1987). Even applying this liberal standard, the court determines that defendants' motion to dismiss should be granted.

## FACTS

For purposes of the motion, the court liberally construes the facts in plaintiffs' favor. On November 8, 1988, plaintiffs Weaver and McKaye sent, via first-class mail, legal materials to plaintiff Martin. All three plaintiffs were inmates in the custody of the Department of Corrections. According to plaintiffs, these materials "had already been screened by the mailroom prior to distribution to the blocks for inmates" (Grievance attached to Complaint). Two opened envelopes, marked with plaintiff Martin's name, were given to defendant Strassburg for distribution.

Defendant Strassburg searched the envelopes for contraband and discovered the legal materials of plaintiffs Weaver and McKaye inside. Plaintiff Martin was sum-

moned to the resident unit manager's office where he met defendants Strassburg, Mason, and Mulvaney. These defendants informed plaintiff Martin that he was in violation of departmental rules for having legal documents of other prisoners without authorization. These defendants also told Martin that he could not "provide legal service to Mr. McKaye and Mr. Weaver at this facility *without the proper authorization*" (Martin Aff., ¶¶ 4–5; docket # 18) (emphasis added). Allegedly, none of the plaintiffs ever received any of the legal documents.

## DISCUSSION

### A. *Defendants Toombs and Brown*

■ Raymond Toombs is the Warden at IMCF. Robert Brown is the Director of the Department of Corrections. Plaintiffs' complaint does not allege that these two defendants committed, permitted, or aided in the confiscation of the legal materials. In fact, the only aspect in which these defendants appear to be involved is in responding to plaintiff Martin's grievance appeal concerning the confiscated materials.

In order to establish personal liability against an individual defendant, plaintiff must plead and prove that the defendant was personally involved in the activity that forms the basis for the complaint. *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *see Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984) ("At a minimum, a 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct."). Liability under § 1983 may not be imposed vicariously. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Hays v. Jefferson County*, 668 F.2d at 873. The mere fact that a supervisory person is in a position of authority, or that he was aware of

illegal conduct after the fact, does not allow the imposition of liability under section 1983. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989).

Plaintiffs do not allege that defendants Toombs and Brown committed, authorized, or approved the seizure of the legal materials in question. The mere fact that these defendants found plaintiff Martin's grievance concerning the seizure to be without merit is insufficient to state a claim against them. Defendants Toombs and Brown are therefore entitled to dismissal.

### B. *Remaining Defendants*

Read liberally, plaintiffs' complaint raises First Amendment challenges to defendants' conduct. Specifically, plaintiffs allege that censoring their mail was a violation of the First Amendment's protection of freedom of association and access to the courts.[1] A review of plaintiffs' complaint and attached supporting grievance leads the court to conclude that plaintiffs can prove no set of facts that would entitle them to relief.

Plaintiffs' first allegation is that defendants' interception and confiscation of mail between inmates constituted an unlawful invasion of plaintiffs' First Amendment right to correspond. There is no doubt that First Amendment issues are implicated when restrictions are imposed upon an inmate's correspondence. *United States v. Holloway*, 740 F.2d 1373, 1382 (6th Cir.), *cert. denied*, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984). Yet a prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Martin v. Kelley*, 803 F.2d 236, 240 n. 7 (6th Cir.1986) (quoting *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974)); *see Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Lawful incarceration legitimately requires the retraction or with-

---

**1.** The court notes that plaintiffs also raise a Fourth Amendment claim for what they deem as an "illegal seizure" of legal documents. This claim is subject to dismissal as plaintiffs, con-

victed prisoners, have no legitimate expectation of privacy in previously opened envelopes being delivered to them. *See Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

drawal of many rights and privileges, as a necessary consequence of society's need to deter and punish crime. *See O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987).

█ Accordingly, plaintiff's blanket assertion of an absolute right against "censorship" of prisoner-to-prisoner correspondence is frivolous. No such absolute right exists. As *Turner v. Safley* makes clear, prisoners' First Amendment rights are subject to curtailment for legitimate penological reasons. The judgment primarily rests with the prison administrators "who are actually charged with and trained in the running of the particular institution." *Bell v. Wolfish,* 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979). In cases of conflict between prisoner rights and institutional regulation, the Supreme Court has established the following standard: When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is "reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89, 107 S.Ct. at 2261; *see Thornburgh v. Abbot,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). As applied to the instant case, the question is whether defendants' handling of inmate-to-inmate correspondence was reasonably related to legitimate penological interests. The court answers this question in the affirmative.

█ The maintenance of safety and security at a penal institution is a "core function" of prison administration and has long been recognized as a legitimate penological interest. *Turner,* 482 U.S. at 92, 107 S.Ct. at 2263; *see Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1877. IMCF houses the most dangerous and incorrigible prisoners in the state. The "censorship" (opening and checking) of inmate-to-inmate correspondence aids prison authorities in preventing escape plans, inflammatory materials, or other contraband from being exchanged by prisoners. Moreover, the mere opening of inmate correspondence does not necessarily mean that the correspondence will not reach its destination. Although plaintiffs may dislike the fact that their correspondence may be opened and checked, it nevertheless represents one of the instances where individual rights and privileges must be restricted as a consequence of the need to maintain prison security. Therefore, the censoring of inmate-to-inmate correspondence is reasonably related to legitimate penological interests.

█ The second aspect of plaintiffs' First Amendment claim is the allegation that the confiscation of the legal documents denied them access to the courts. In *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977), the Supreme Court held that the First Amendment secures a fundamental right of access to the courts. *See Penland v. Warren County Jail,* 797 F.2d 332, 335 (6th Cir. 1986). The Court held further that prison authorities must shoulder affirmative obligations to help prisoners in the preparation of meaningful legal papers, "by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498. Accordingly, prison authorities must make some provisions to allow inmates reasonable access to jailhouse lawyers. *See Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). This constitutional right, like others in the prison context, must yield when reasonably necessary to accommodate legitimate penological needs. Again applying the *Turner v. Safley* analysis, the court finds that the confiscation of plaintiffs' legal documents, because of the lack of a legal services agreement between them, was reasonable.

Policy Directive PD–DWA–61.01, relied upon by defendants to justify their confiscation of plaintiffs' package, reads in pertinent part as follows:

*Legal Assistance from Other Prisoners*
The Department is not obligated to ensure that prisoners without counsel are provided the services of other prisoners to assist in legal matters, nor is any institution obligated to establish a procedure or mechanism that ensures a prisoner the opportunity to provide such assistance or services to other prisoners. However, institutions shall not prohibit prisoners without counsel from request-

ing legal assistance from other prisoners within the same facility who may have the skills or ability to effectively seek judicial relief, nor shall any reprisals be made against a prisoner who assists other prisoners with legal problems.

To avoid exploitation of prisoners by others, including "jail house lawyers," the institution shall require that prisoners seeking or given such legal assistance agree in writing as to the terms of any such arrangement, as set forth in Administrative Rule 791.6617. The institution shall make no effort to enforce any terms agreed to between the parties, nor shall the agreement interfere with regular institutional programming or inter-institutional transfers. If a party to an agreement is transferred prior to completion of work on a case, the assistance may continue through written correspondence, if the parties so desire. However, such correspondence will be subject to Department rules on inter-facility mail, including the right of staff to read such correspondence. Violation of the institutional rules concerning such agreements may result in disciplinary action and termination of the assistance. Prisoners who offer their services as "jail house lawyers" and who refuse to conform to these guidelines shall be restricted from assisting prisoners or doing any legal work other than their own.

The administrative rule referred to in the policy directive states the following:

R 791.6617 Legal assistance from other residents; written agreement; approval; grievance; violation.

Rule 617. (1) A resident may not directly or indirectly receive compensation in goods or services for providing legal assistance. However, residents may obtain legal assistance from other residents if an agreement for that assistance is in writing.

(2) A written agreement for legal assistance shall have prior written approval from the institution head or his designate, shall contain all the terms and conditions of the provision of assistance, and shall be signed by the residents involved.

(3) The institution head or his designate shall approve an agreement for legal assistance, unless:

(a) Either of the residents has violated subrule (1).

(b) The terms of the agreement would interfere with the normal institutional programming.

(4) A resident claiming to be aggrieved by a department violation of a valid agreement for the preparation of legal documents under this rule may seek redress through the grievance procedures established in R 791.3325.

(5) Willful violation of regulations for legal assistance shall be grounds for disciplinary action.

The court concludes that Policy Directive PD–DWA–61.01 passes muster under the *Turner* reasonableness test and that its application in this case did not violate plaintiffs' constitutional rights. The Department of Corrections' interest in jailhouse lawyer agreements is stated in the directive itself: "[t]o avoid exploitation of prisoners by others, including 'jail house lawyers'...." Administrative Rule 791.6617(1) suggests one way in which a jailhouse lawyer possessing a veneer of legal knowledge might exploit his more ignorant fellows: by providing assistance of dubious value in exchange for unauthorized economic favors.

The Department of Corrections' interest in preventing such potential exploitation is unquestionably legitimate. Prison administrators have the duty, among other things, to attempt rehabilitation of their charges. An inmate's attitude toward his crime, his willingness to submit to official authority, and his resolve to forswear future antisocial behavior can be affected by the stirring up of litigation against his jailers or the state. Prison officials likewise must maintain order within institutional walls. There is at least some threat that unapproved economic agreements between prisoners could breed tensions and disputes leading to assaults or other reprisals.

The Policy Directive PD–DWA–61.01 requirements that jailhouse lawyer assistance agreements be in writing and approved by

prison staff reasonably further the legitimate interests identified above. These requirements simply allow the administration to monitor the agreements to ensure that no exploitation is in fact likely to take place. The directive does not absolutely ban jailhouse lawyer assistance agreements, and it imposes the minimal burdens of a writing and a request for approval on the prisoners and jailhouse lawyers who make such agreements. *See Turner*, 482 U.S. at 89–91, 107 S.Ct. at 2261–63.

In the present case, plaintiffs' complaint and attached documents make it clear that they did not have a legal services agreement that complied with Policy Directive PD–DWA–61.01. Confiscation of the legal materials in question was therefore a reasonable means of terminating the unauthorized legal assistance prohibited by valid prison policy.

Finally, plaintiffs make a bare allegation that they have been prejudiced in their ability to access the courts by the confiscation of the legal materials in question. In order to maintain a valid claim based on a denial of access to the courts, a prisoner must "show that he has somehow been prejudiced" in the prosecution of a specific claim. *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir.1985). Plaintiffs have failed to do so. There is no allegation that plaintiffs missed any court deadlines, that any action was dismissed, or that sanctions were imposed upon them. The civil rights statutes require specific allegations of facts indicating a deprivation of rights. *See Chapman v. City of Detroit*, 808 F.2d 459 (6th Cir. 1986); *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir.1971). Plaintiffs have done nothing but make an unsupported claim of prejudice. Moreover, even if plaintiffs were somehow prejudiced, plaintiffs themselves were the cause of the prejudice for failing to obtain proper authorization to provide legal services to each other. Plaintiffs' error surely cannot be transformed into a constitutional violation by defendants.

Accordingly, the court finds that plaintiffs can prove no set of facts which would entitle them to relief for defendants' sei-zure of plaintiffs' inmate-to-inmate correspondence. Defendants' motion to dismiss will be granted.