Charles RUMSEY, Jr., Plaintiff,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS[1], Jonatha Maystead and Kathy Honton, Defendants.

Civil Action No. 03–CV–72221–DT.

United States District Court,
E.D. Michigan,
Southern Division.

May 28, 2004.

1. There is no indication on the Court's docket that Defendant Michigan Department of corrections was served with the summons and complaint.

Charles Rumsey, Muskegon Heights, MI, pro se.

Julia R. Bell, Lansing, MI, for Defendants.

### ORDER ACCEPTING REPORT AND RECOMMENDATION

HOOD, District Judge.

This matter is before the court on Magistrate Judge Mona K. Majzoub's Report and Recommendation dated May 4, 2004.

To date, no Objections have been filed to the Report and Recommendation.

The Court has had an opportunity to review the Report and Recommendation and finds that the Magistrate Judge reached the correct conclusion for the proper reasons. The Court agrees with the Magistrate Judge that Plaintiff's access to courts claim against Defendants Jonatha Maystead and Kathy Honton must be dismissed. The Court further agrees with the Magistrate Judge that Plaintiff has failed to show he has suffered actual injury sufficient to bring a denial of access to the courts claim.

Although there is no indication that Defendant Michigan Department of Corrections ("MDOC") was properly served with the complaint, this Defendant is also dismissed because the MDOC is not a person under 42 U.S.C. § 1983 and claims against the MDOC are barred by the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. ct. 3057, 57 L.Ed.2d 1114 (1978); *Abick v. Michigan*, 803 F.2d 874, 876–77 (6th Cir. 1986).

Accordingly,

IT IS ORDERED that Magistrate Judge Majzoub's Report and Recommendation dated May 4, 2004 is ACCEPTED and ADOPTED as this Court's findings of fact and conclusions of law.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment **(Docket No. 9, filed September 26, 2003)** is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for summary Judgment **(Docket No. 17, filed January 7, 2004)** is DENIED.

IT IS FURTHER ORDERED the Complaint is DISMISSED.

### REPORT AND RECOMMENDATION

MONA K. MAJZOUB, Magistrate Judge.

**RECOMMENDATION:** This Court recommends that Defendants' Motion For Summary Judgment be GRANTED and Plaintiff's Cross Motion For Summary Judgment be DENIED.

\* \* \* \* \* \*

Plaintiff is currently incarcerated under the custody of the Michigan Department of Corrections (MDOC) at the Brooks Correctional Facility (LRF) in Muskegon, Michigan. He filed the instant complaint on June 10, 2003, pursuant to 42 U.S.C. § 1983, claiming that the defendants unconstitutionally denied him access to court. The Defendants to this action are Jonatha Maystead, a librarian employed by MDOC at the Robert Cotton Correctional Facility (JCF) in Jackson, Michigan, and Kathy Honton, a librarian employed by MDOC at the Charles Egeler Correctional Facility (SMN) also located in Jackson, Michigan. The case was referred to Magistrate Judge R. Steven Whalen for all pretrial proceedings and on September 26, 2003, Defendants filed a Motion For Summary Judgment. On February 9, 2004, this Court issued Administrative Order 04–AO–10 reassigning the instant action from Magistrate Judge Whalen to Magistrate Judge Mona K. Majzoub.

On November 2, 1999 while incarcerated at JCF, Plaintiff filed a civil rights complaint (Case No. 99–75332) pursuant to 42 U.S.C. § 1983, raising a claim based on the Eighth Amendment's prohibition against cruel and unusual punishment. Specifically, Plaintiff alleged that eight MDOC employees violated his Eighth Amendment rights by their deliberate indifference to his medical needs. The case was referred by District Judge Robert H. Cleland to Magistrate Judge Virginia Morgan for all pretrial proceedings.

On April 24, 2000, several of the Defendants in case no. 99–75332 filed a Motion For Summary Judgment (Docket Sheet, Case No. 99–75332, entry # 19). On April 27, 2000, Magistrate Judge Morgan issued an Order setting the deadline for Plaintiff's response to Defendants' Motion for July 3, 2000 (Docket # 20). On May 23, 2000, Plaintiff filed a Response to Defendants' Motion For Summary Judgment (Docket # 21). Apparently, Plaintiff wished to supplement his response to defendants' motion by filing additional materials before the July 3, 2000 deadline.

Next Plaintiff alleges that:

On June 11, 2000[,] Plaintiff was at the Law Library at JCF to obtain photo copying services to support his affidavit according to the Magistrate Judge's order of April 27, 2000. The Librarian Assistant, Ms. Cooke said, Ms. Maystead needs to read this court order and determine the approval of the photo copying.

On June 13, 2000, Plaintiff picked up his copies from the library and requested additional copies of medical records and grievance forms to support his Affidavit. On June 15, 2000, Plaintiff returned to the library at which time he was allegedly advised by an assistant librarian that his additional request for copies was denied due to non-sufficient funds (Plaintiff's Complaint, Case No. 03–72221, pg. 9, ¶ 41). Plaintiff alleges there should have been no delay in completing his additional request for copies because he presented Magistrate Judge Morgan's Order which directed him to submit an Affidavit and supporting materials along with his Response to Defendants' Motion For Summary Judgment. *Id.* Plaintiff spoke with Defendant Maystead about the denial of his additional copying request and alleges that Maystead reiterated that the reason for the denial was due to non-sufficient funds. Defen-

dant Maystead agreed to complete Plaintiff's additional copy request. *Id.* ¶ 45. At that time, Plaintiff indicated that he needed copies of additional materials (i.e., The Policy of Humane Treatment, Health Services, Medication Control and Pharmacy Services and Medication Management).

On June 18, 2000, Plaintiff returned to the library to retrieve his additional copies. On that date, he received the copies of his previously requested medical records, grievance forms, and the Policy of Humane Treatment. *Id.* ¶ 47. Plaintiff inquired into the other materials that were not photo-copied and allegedly had to dispute their relevance with Defendant Maystead before she finally agreed to copy the materials. Plaintiff picked up the copied materials on June 20, 2000; however, Defendant Maystead allegedly refused to copy certain items requested by Plaintiff. *Id.* ¶¶ 55–56. Plaintiff finally received the remainder of his requests on June 27, 2000.

On June 16, 2000, Magistrate Judge Morgan issued a Report and Recommendation in which she recommended that the court grant six of the eight Defendants' Motions For Summary Judgment. On June 28, 2000, Plaintiff filed objections to Magistrate Judge Morgan's Report and Recommendation and on June 30, 2000, Plaintiff's Supplemental Brief was received by the clerk of the court.[1] As to four of the eight defendants, Magistrate Judge Morgan concluded:

Plaintiff has failed to present evidence sufficient to create a fact issue that defendants Martin, McGinnis, DeVoss, or Naylor 'implicitly authorized, approved or knowingly acquiesced' in the allegedly unconstitutional conduct that gave rise to this suit.[2]

(MJ. Morgan, Report and Recommendation, dated June 20, 2000, pg. 10 & n. 2). Magistrate Judge Morgan correctly held that "in order for a prison official to be held liable for monetary damages in a § 1983 action, the plaintiff must show that the official was directly involved in the allegedly offending conduct." *Id.* at 9 (citations omitted). Accordingly, Magistrate Judge Morgan recommended that Defendants Martin, McGinnis, DeVoss, and Naylor were entitled to summary judgment.

As to a fifth Defendant, Anspaugh, an MDOC nurse, Magistrate Judge Morgan concluded that "there is nothing in the record to substantiate th[e] allegation" that Anspaugh " 'went out of her scope of authority in denying prescribed medication.' " *Id.* at 10 (internal citations omitted). Magistrate Judge Morgan further stated:

There are no documents in the record that show that Anspaugh was involved in providing health care services to plaintiff, or that she was responsible for supplying plaintiff with medication. Plaintiff has failed to present evidence

---

1. The filing dates of Plaintiff's objections and Supplemental Brief suggest that he aware that Magistrate Judge Morgan had already issued a Report and Recommendation even before he mailed his Supplemental Brief to this Court. While it is true that Magistrate Judge Morgan ordered that Plaintiff response to Defendants' Motion For Summary Judgment before July 3, 2000, Plaintiff had already filed his response on May 23, 2000 such that Magistrate Judge Morgan would have had no way to know that Plaintiff intended to file a Supplemental Brief.

2. These defendants barely even appear in the record. If the court overlooked any facts relevant to their liability, it was certainly not for want of reviewing the record. As noted above, neither plaintiff nor defendants favored the court with any discussion of the facts of the case. Thus, the court undertook a searching inquiry of the documents submitted. Those documents barely speak of the involvement of Martin, McGinnis, DeVoss, and Naylor. If there is something in there in support of plaintiff's claims against them, it was plaintiff's burden to place it squarely before the court. He did not.

sufficient to create a fact issue that Anspaugh was deliberately indifferent to his medical needs. Accordingly, she is entitled to summary judgment.

*Id.*

Magistrate Judge Morgan also recommended summary judgment be granted to Defendant Woodard–Valentine. Plaintiff claimed that Woodard–Valentine canceled a medical appointment for no reason and then lied about the incident by informing the grievance review officer that Plaintiff was at fault for the cancellation. Magistrate Judge Morgan concluded:

> Plaintiff's conclusory allegations of retaliation are insufficient to withstand a motion for summary judgment. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (nonmovant "must come forward with specific facts showing that there is a genuine issue for trial").
>
> To the extent that plaintiff's claim against Woodard–Valentine may be construed as an Eighth Amendment claim, there is no evidentiary support for such a claim. There is nothing in the record indicating that Woodard–Valentine denied plaintiff necessary medical care. Even if the court accepts plaintiff's allegation that she unjustifiably canceled the immediate medical attention at that time or that he suffered any adverse health consequences as result of the cancellation. Woodard–Valentine is entitled to summary judgment on plaintiff's Eighth Amendment claim, to the extent the claim may be construed as such.

(MJ Morgan R & R, pg. 11–12).

For the reasons stated above, Magistrate Judge Morgan recommended that the court dismiss six of the eight defendants named in Plaintiff's previous case no. 99–75332. Over Plaintiff's objections to Magistrate Judge Morgan's Report and Recommendation, District Judge Cleland accepted Magistrate Judge Morgan's recommendation and thus dismissed Plain-

tiff's claims against six of the eight Defendants. On September 25, 2000, Plaintiff was transferred from JCF to SMN.

On November 17, 2000, the remaining Defendants, Dr. Hall and Dr. Thakur, filed a Motion For Summary Judgment. Dr. Hall treated Plaintiff's asthma condition while he was confined at the Adrian Correctional Facility and Dr. Thakur treated Plaintiff at the Cotton Correctional Facility. On December 4, 2000, Magistrate Judge Morgan issued an Order setting February 1, 2001 as the deadline for Plaintiff's response to Defendant Hall and Thakur's motion. In December 2000, Plaintiff presented Magistrate Judge Morgan's Order to Defendant Honton, the librarian at SMN, and requested copies of affidavits, interrogatories, and admissions. Plaintiff obtained the requested documents without incident. On January 24, 2001, Plaintiff asked Defendant Honton to notarize his Affidavit of Merit which he was going to submit to support his response to Defendant Hall and Thakur's Motion For Summary Judgment (Plaintiff's Complaint, pg. 21, ¶ 94). Plaintiff alleges that Defendant Honton was aware that his legal documents needed to be received by the clerk of the court before February 1, 2001 as required by Magistrate Judge Morgan's Order. Honton assured him that the documents would be mailed out within a day. *Id.* at 23, ¶ 109. Plaintiff's Supplemental Brief was docketed (received) by this Court on February 5, 2001 (*See* Docket # 64, Case No. 99–75332).

On February 27, 2001, Magistrate Judge Morgan issued a second Report and Recommendation in which she recommended that Defendant Hall and Thakur's Motion For Summary Judgment be granted. In her Report and Recommendation, Magistrate Judge Morgan concluded:

> Both defendants examined plaintiff on several occasions and prescribed him nu-

merous medications in an effort to bring his asthma under control. Those efforts were unavailing, as plaintiff continued to have significant breathing difficulties. Nonetheless, the record is clear that plaintiff received extensive medical treatment from defendants, as well as others. There is no indication in the record that they ever denied plaintiff needed medications or other medical assistance. The fact that their course of treatment was not entirely effective does not establish that they were deliberately indifferent.

Plaintiff's claims against both defendants appear to be (1) that they prescribed improper combinations of drugs or drugs that were less effective than others that could have been prescribed, (2) that they should have conducted an allergy test and a test to determine whether plaintiff had a lung infection, and (3) that they failed to see to it that plaintiff received his medication on time.

The last of these claims is nonsense. As is detailed above, defendants wrote numerous prescriptions for plaintiff. Perhaps they were not filled or refilled in a timely manner, but there is nothing in the record indicating that defendants were responsible for these delays.

With regard to the remaining claims, plaintiff has not shown that defendants deliberately failed to provide him with necessary care. Plaintiff has had an ongoing pattern of treatment. He has failed to show that defendants prescribed him inappropriate and 'lethal' combinations of drugs and/or ineffective drugs. There is no support in the record for plaintiff's exaggerated statement that defendants prescribed him 'lethal' combinations of drugs. However, even if the court accepts as true that defendants prescribed certain drugs that were potentially harmful when taken in combination or drugs that were less effective than others, defendants, on this record,

would be guilty of nothing more than negligence. A showing of negligence is insufficient to establish that a prison official acted with deliberate indifference. *Estelle*, 429 U.S. at 105–06, 97 S.Ct. 285; see also *Brooks v. Celeste*, 39 F.3d 125 (6th Cir.1994).

In view of the entire record and defendants' treatment efforts, the same may be said regarding plaintiff's claims that they should have run additional tests. Defendants examined plaintiff on several occasions. Even if they failed to run additional tests that would have been medically desirable, it would not amount to deliberate indifference. As the Supreme Court stated in *Estelle*, 429 U.S. at 107, 97 S.Ct. 285:

> [T]he question whether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice.

(MJ Morgan, R & R, dated February 27, 2001, pg. 8–9).

On March 21, 2001, Plaintiff filed objections to the Report and Recommendation and on July 18, 2001, District Judge Cleland adopted Magistrate Judge Morgan's recommendations thereby dismissing Plaintiff's remaining claims against Defendants Hall and Thakur.

\*　　\*　　\*　　\*　　\*　　\*

On June 10, 2003, Plaintiff filed the instant action alleging that he was denied access to the courts based on this Court's dismissal of case no. 99–75332. More specifically, he asserts that had Defendant Maystead completed his copy requests in a more timely fashion, he would have submitted those materials to the Court for its consideration and his case would have

been decided differently as to Magistrate Judge Morgan's first Report and Recommendation. He also asserts that had it not been for the untimely mailing by Defendant Honton, this Court would have received his Supplemental Brief before the February 1, 2001 deadline set by the Court. With the documents submitted in the Supplemental Brief, Plaintiff contends that he would have provided a factual basis for his claims pertaining to Defendants Hall and Thakur. Accordingly, he asserts that Magistrate Judge Morgan's second Report and Recommendation would have been decided differently. In their Motion For Summary Judgment now before this Court, the Defendants contend that Plaintiff's claims of denied access to court must fail. Plaintiff has also filed a Cross Motion For Summary Judgment.

### STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 914 (6th Cir.2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings and affidavits.

*Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

### ACCESS TO COURTS

 Prisoners have a fundamental right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). "The right springs from the Due Process Clauses of the Fifth and Fourteenth Amendments and the right of petition found in the First Amendment," *Hodge v. Prince*, 730 F.Supp. 747, 751 (N.D.Tex.1990), as well as from the Privileges and Immunities Clause of Article IV. *See Chambers v. Baltimore and Ohio R.R.*, 207 U.S. 142, 148, 28 S.Ct. 34, 52 L.Ed. 143 (1907). A prisoner's access to the courts must be adequate, effective and meaningful. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir.1984); *Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir.1983). A prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 349, 351–53, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). To meet this requirement, a plaintiff must show that the actions of the prison officials "hindered the prisoner's efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir.1996); *accord Lewis*, 518 U.S. at 353, 116 S.Ct. 2174; *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir.1996); *Stewart v. Block*, 938 F.Supp. 582, 586 (C.D.Cal.1996)(plaintiff must show "a specific instance in which he was actually denied access to the courts.")(internal quotation omitted). Further, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354, 116 S.Ct. 2174. The right of

access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines," and thus the right is limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355, 116 S.Ct. 2174. Under *Lewis,* dismissal is appropriate where a prisoner fails to allege a specific, litigation-related detriment resulting from the prison official's conduct. *See Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir.1996).

Basically, Plaintiff asserts that his previous lawsuit (case no. 99–75332) would not have been dismissed if Defendant Maystead would have provided more timely photo-copy services and Defendant Honton would have mailed his supplemental pleadings in a more timely fashion. Following a review of each and every page of Plaintiff's allegedly late-mailed documents, this Court concludes that Plaintiff fails to demonstrate actual injury as a result of either of the Defendants' actions.

### 1. *Defendant Maystead*

■ As to Defendant Maystead, Plaintiff alleges that she was uncooperative in completing his requests for copies of certain documents. Upon completion of the copy requests, Plaintiff submitted his Affidavit In Opposition To Defendants Motion For Summary Judgment ("Affidavit"). The Affidavit was received by the clerk of the court on June 30, 2000, several days *after* Magistrate Judge Morgan issued her first Report and Recommendation of June 16, 2000, in which she recommended that the Court dismiss six of the eight defendants. Thus, the question for this Court is whether any of the documents contained in Plaintiff's Affidavit provide any basis, legal or factual, which would have changed the outcome of Magistrate Judge Morgan's recommendations.

Magistrate Judge Morgan recommended that Defendants Martin, McGinnis, DeVoss, and Naylor be dismissed for their lack of personal involvement in the acts giving rise to Plaintiff's claims. In his Affidavit, Plaintiff mentions Defendant McGinnis on numerous occasions. Plaintiff alleges:

> Plaintiff received the Step Three Appeal to Grievance No. 1 Two from Kenneth L. McGinnis, Director of the Michigan Department of Corrections (A Defendant in this Court action) dated 12/8/1997 and was signed by him. **Mr. McGinnis, failed to act.**

(Appendix, pg. 103, Exhibit 20). The other references to Defendant McGinnis are also based on his involvement in the grievance process. Plaintiff's allegations concerning Defendants Martin and DeVoss were based on their similar involvement in the grievance process. (*See* Affidavit, Appendix pg. 128, 132, 120, Exhibit 20).

■ Claims which are based simply on the denial of a grievance do not state a claim of constitutional dimension. *See Martin v. Harvey,* No. 00–1439, 2001 WL 669983, *2 (6th Cir.2001) (unpublished) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999) (as against defendants whose only involvement was the denial of administrative remedies and the "failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants directly participated ... the claimed ... acts[ ]."); *Weaver v. Toombs,* 756 F.Supp. 335, 337 (W.D.Mich.1989) ("The mere fact that these defendants found plaintiff Martin's grievance concerning the seizure to be without merit is insufficient to state a claim against them."). In order to state a claim for monetary damages under § 1983, the plaintiff must allege some specific, per-

sonal wrongdoing on the part of the individual defendant, and theories of vicarious liability or respondeat superior are not sufficient. *Rizzo v. Goode*, 423 U.S. 362, 376, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Therefore Plaintiff failed to state a claim against Defendants McGinnis, Martin, and DeVoss, and nothing contained in his Affidavit would have changed Magistrate Judge Morgan's recommendation as to these defendants. Thus, Plaintiff has failed to meet the actual injury requirement necessary in order to prove a claim based on denied access to court.

■ Next, this Court considers whether Magistrate Judge Morgan's recommendations as to Defendants Anspaugh and Woodard–Valentine would have been different based on Plaintiff's Affidavit. In the Affidavit, Plaintiff alleges:

On 7/2/1997 Plaintiff in the morning I was experiencing breathing problems. I had gone to Health Care and received breathing treatments from nurse Valentine . . . and she issued a two day lay-in. Nurse also told me if I had any problems breathing to have security bring me over immediately (Appendix, pg. 95, Exhibit 20, ¶ 12).

On 10/3/1997 Plaintiff was seen by nurse Valentine (Woodard). I asked nurse Valentine when was my doctor appointment? Nurse did not know (Appendix, pg. 97, Exhibit 20, ¶ 22).

On 11/20/1997 Plaintiff went to Health Care Services at Adrian Correctional Facility and received a flu vaccine from nurse Valentine. . . . Before signing a document I asked questions pertaining to allergic reactions such as experiencing difficulties breathing. I personally informed nurse Valentine that I have been having adverse reactions to Albuterol and that I have been advising Office of Health Care for the past two months. However, I have not received a doctor visit during this time. Nurse

Valentine stated she would inform the doctor. [See also, Supp. Exhibit 1, no entree by Ms. Valentine on 11/20/1999] (Appendix, pg.100, ¶ 33).

On 12/20/1997 at around 10:00 a.m. Plaintiff went to Health Care Services for a doctor visit. [The doctor's assistant] went through my medical record looking for the doctors orders from Dr. Thakur . . . pertaining the change of the prescription from Albuterol to Alupent. The nurse their [sic][,] Ms. Valentine . . . [,] admitted the mistake of the ordered prescription, nurse also stated she did not notice that I was not supposed to use Albuterol. Nurse Valentine assumed that I could use Albuterol because they did not have Alupent inhaler (App.Pg.106, ¶ 51).

On 2/19/1998 Plaintiff . . . informed Officer Wilson [that he was] experiencing breathing problems and that [he was] out of Alupent Inhaler for [his] asthma. Once at Health Care around 1:00am, Joyce Anspaugh R.N . . ., asked if I filled out a Health Care Form. I told nurse that I did but it wasn't finished filled out. Nurse said it don't matter. The nurse took vitals and listened to the air exchange within my lungs. Nurse Anspaugh then called Duane Waters Hospital because of wheezing in lungs, tightness in left lung. Nurse told them I was experiencing pain on my left side, front and back of chest. Nurse wanted to give me a breathing treatment do to possible infection or fluid in lungs to reopen airways, nurse said on phone. After the phone call[,] nurse gave me breathing treatment. I responded with improvement. After the treatment the nurse and I discussed about Tessalon Perles (medication) and why I have not been put on Antibiotics. Nurse said that if the problems still occur that they might put me on them. I asked nurse when was I going to see the doctor?

Nurse told me I would see him on my chronic care clinic annual appointment. Nurse told me if I have problems breathing again to have custody bring me over for another treatment. Nurse said she had one more treatment for me if I needed it (App., pg.111, ¶ 59).

On 3/10/1998 Plaintiff received the response to the 3/6/1998 Health Care Request Form [requesting refills of Alupent, Azmacort, Benadryl, and Tessalon Perless] by [Defendant] Anspaugh R.N.... Nurse Anspaugh wrote on the medical kite, "too MD to order"; them crossed it out and wrote, "too early Rekite after 3–12" (App., pg.113, ¶ 62).

On 3/11/1998 Plaintiff sent another medical Health Care Request Form requesting medication and informed health care Plaintiff was experiencing tightness in the chest and hard to breath. That health care, [Defendant] Anspaugh said to wait till after 3/13/1997 (App., pg.113, ¶ 64).

Plaintiff argues that had Magistrate Judge Morgan known about the aforementioned allegations before issuing her Report and Recommendation, there would have been a sufficient factual issue such that Magistrate Judge Morgan would have denied Defendants' Motion for Summary Judgment. For the following reasons, this Court disagrees.

■ In case no. 99–75332, Plaintiff alleged that Defendants Anspaugh and Woodard–Valentine were deliberately indifferent to his medical needs. To establish an Eighth Amendment violation based upon the denial of medical attention, Plaintiff must prove that Defendants acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

■ Deliberate indifference is the reckless disregard of a substantial risk of serious harm. *See id.* at 835–36, 114 S.Ct. 1970. Mere negligent inattention to a prisoner's request for assistance, or even gross negligence, does not offend substantive due process under the Fourteenth Amendment, *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), and medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle,* 429 U.S. at 106, 97 S.Ct. 285. Moreover, a mere difference of opinion between a prisoner and a doctor with respect to diagnosis and treatment does not rise to the level of a constitutional deprivation. *See id.* at 107, 97 S.Ct. 285; *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976). Basically, there must be a knowing failure or refusal to provide urgently needed medical care, the consummate effect of which causes a residual injury which could have been prevented with timely attention, and the court must consider the wide discretion allowed prison officials in their treatment of prisoners under authorized medical procedures. *See Westlake,* 537 F.2d at 860.

Contrary to his assertions, Plaintiff's Affidavit only further supports Magistrate Judge Morgan's recommendation that he failed to demonstrate a cognizable claim under the Eighth Amendment's prohibition against cruel and unusual punishment. For instance, the Affidavit highlights the fact that Plaintiff was treated on numerous occasions for his respiratory condition. Nothing in Plaintiff's Affidavit supports his claim that either Nurse Woodard–Valentine or Anspaugh were deliberately indifferent to Plaintiff's serious medical needs. The allegations surrounding the alleged mix-up of Plaintiff's prescriptions by Defendant Woodard–Valentine shows nothing more than negligence, if that. The Eighth Amendment's prohibition against cruel and unusual punishment does

not encompass a claim sounding in negligent medical treatment. Defendant Anspaugh's response to Plaintiff's request for medication re-fills also fails to demonstrate deliberate indifference to a serious medical need. Plaintiff filed an administrative grievance complaining that his medications were not being re-filled as needed. The respondent to the grievance indicated:

> If you are using your inhalers to[o] frequently you will run out. Overuse is not in your health's best interest, The response [from the nurses] that you are asking too soon is appropriate—however you should not be without it either. I will re-emphasize to the nurses that you must be given a refill and evaluation for why you need more medication"

(App., pg.115, ¶ 71). Seemingly, the staff followed guidelines for refilling medications. Because Plaintiff was running out of his medications sooner than anticipated, he experienced some brief delay in obtaining refills. These facts, if true, do not demonstrate deliberate indifference to a serious medical need. In fact, Plaintiff's Affidavit provides no factual or legal basis to change or alter in any way the findings and and recommendations of Magistrate Judge Morgan.

### 2. Defendant Honton

■ Next, Plaintiff complains that Defendant Honton delayed mailing an Affidavit of Merit attached to his Motion to Enter Discovery Materials. Plaintiff alleges that these documents would have provided him a sufficient factual basis to support his claim against Defendants Hall

and Thakur so as to survive Defendants' Motion For Summary Judgment. The Court ordered Plaintiff to file a response with any accompanying documents by February 1, 2001. Plaintiff's documents were received by the clerk of the court on February 5, 2001. Magistrate Judge Morgan's second Report and Recommendation was not issued until February 27, 2001; however, it is unclear whether Magistrate Judge Morgan reviewed and/or relied upon Plaintiff's untimely filed documents. Assuming that Magistrate Judge Morgan did not consider Plaintiff's untimely filed documents, this Court must now determine whether those documents provide a sufficient basis to reverse Magistrate Judge Morgan's findings and recommendation.[3]

The document in question, Plaintiff's Affidavit of Merit attached to his Motion to Enter Discovery Materials, contains Defendant Hall and Thakur's Responses to Plaintiff's interrogatory requests. These documents do not contain any factual allegations sufficient to support Plaintiff's claims that the doctors were deliberately indifferent to his medical needs. Plaintiff also attached several affidavits of other prisoners who indicated that they had witnessed Plaintiff suffer from severe asthma attacks and that, at times, he was without medication to treat the attacks. These affidavits fail to demonstrate that doctors Hall and Thakur acted with deliberate indifference to Plaintiff's medical needs. In fact, these affidavits fail to even mention either of the Defendant doctors. Therefore, these affidavits could not have

---

**3.** The Affidavit which was received after Magistrate Judge Morgan's first Report and Recommendation contained the bulk of the allegations against Defendant Doctors Hall and Thakur. That Affidavit, although not relied upon by Magistrate Judge Morgan in her first Report and Recommendation, was relied upon for her second Report and Recommendation. The Court knows this because the second Report and Recommendation included

ed a more lengthy discussion of the underlying facts, taken from Plaintiff's first Affidavit, giving rise to Plaintiff's claims. Therefore, this Court need not consider whether the allegations contained in Plaintiff's first Affidavit would have changed Magistrate Judge Morgan's second Report and Recommendation. Such a review by this Court would be precluded by the doctrine of Law of the Case.

changed the outcome of Magistrate Judge Morgan's second Report and Recommendation. There was nothing else attached to Plaintiff's second mailing that would have provided a factual basis for his claims against Defendants Hall and Thakur. Because Plaintiff has suffered no actual injury by Defendant Honton, who allegedly mailed his legal documents in an untimely fashion, he has no standing to bring a claim against her based on denied access to court.

## CONCLUSION

Having reviewed the documents handled by both Defendants Maystead and Honton, this Court finds that Plaintiff has suffered no injury sufficient to bring a claim of denied access to court. Accordingly, this Court recommends that Defendants' Motion For Summary Judgment be GRANTED, Plaintiff's Cross Motion for Summary Judgment be DENIED, and the instant case dismissed.

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection # 1," "Objection # 2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection # 1," "Response to Objection # 2," etc.