Ronald D. BOURDON, Plaintiff–
Appellant,

v.

Thomas LOUGHREN, Chenango Coun-
ty Sheriff, Vincent Marcenelli, Che-
nango County Undersheriff, Henry
Campbell, Chenango County Deputy
Sheriff, Sergeant Robinson, Chenango
County Deputy Sheriff, in their offi-
cial and individual capacities, Defen-
dants–Appellees.

No. 03–0196.

United States Court of Appeals,
Second Circuit.

Submitted: Feb. 19, 2004.

Decided: Oct. 5, 2004.

Ronald D. Bourdon, Auburn, NY, pro se.

John J. Walsh, Boeggeman, George, Hodges & Corde, P.C., White Plains, NY, for Defendants–Appellees.

Before: OAKES, KEARSE, and CABRANES, Circuit Judges.

Judge OAKES concurs in the result in a separate concurring opinion.

JOSÉ A. CABRANES, Circuit Judge.

Ronald Bourdon—a pretrial detainee in the Chenango County, New York jail at the time relevant to this appeal—claims that officials of the Chenango County Jail ("defendants") violated his constitutional right of access to the courts [1] by denying his request for reference materials from the jail's law library, failing to maintain a law library with adequate and up-to-date materials, and failing to provide timely services of a public notary, all of which allegedly harmed Bourdon in his efforts to prepare and file *pro se* a timely pretrial motion to dismiss the state criminal indictment pursuant to which he was being detained. At the time Bourdon requested the materials and notary services and ultimately moved to dismiss the indictment, Bourdon—an indigent prisoner—was represented by court-appointed counsel.

Raising only an access-to-the-courts claim, Bourdon filed a complaint in the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Chief Judge* ) pursuant to 42 U.S.C. § 1983.[2] On cross-motions for

---

1. The constitutional right of access to the courts assures that prisoners, including pretrial detainees, have the tools they need in order to defend against criminal charges, attack their convictions and sentences (directly or collaterally), and bring civil rights claims challenging the conditions of their confinement. *See, e.g., Lewis v. Casey,* 518 U.S. 343, 350–55, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 821–28, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Although the basis of the right of access has been described as "unsettled," *Christopher v. Harbury,* 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court has grounded the right, as it pertains to prisoners, in the Due Process Clauses of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment, *see, e.g., Murray v. Giarratano,* 492 U.S. 1, 11 n. 6, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) ("The prisoner's right of access has been described as a consequence of the right to due process of law, and as an aspect of equal protection." (internal citations omitted)).

For further elaboration on the constitutional right of access to the courts and its application to prisoners, see "Discussion," Part II, *post.*

2. 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or

summary judgment, the District Court granted defendants' motion and dismissed the complaint.

On appeal, Bourdon contends that the District Court erred in granting summary judgment to defendants. He argues that his appointed counsel was ineffective and therefore, notwithstanding his representation by that attorney, defendants hindered Bourdon's access to the state trial court, in violation of his constitutional right of access to the courts, when they denied Bourdon's request for reference materials. Bourdon, however, has not asserted a cause of action of ineffective assistance of counsel, and, in any event, an ineffectiveness cause of action would be inappropriate in a proceeding brought under § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 318–19, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (holding that public defenders do not act "under color of state law" and therefore are not subject to suit under 42 U.S.C. § 1983); *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir.1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983."). Rather, in service of his access-to-the-courts claim, Bourdon invokes the effectiveness inquiry relevant to the Sixth Amendment's guarantee of the assistance of counsel.[3] It is true that the rights to assistance of counsel and of access to the courts "are interrelated . . . . However, the two rights are not the same." *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir.2001). For the reasons discussed below, we reject Bourdon's argument that the effectiveness inquiry pertinent to the Sixth Amendment right to counsel informs the inquiry relevant to an alleged violation of access to the courts. Instead, we conclude that the appointment of Bourdon's counsel satisfied the state's obligation to provide access to the courts, and we affirm the order of the District Court.

## BACKGROUND

In the fall of 1996, Bourdon was incarcerated in the Chenango County Jail pursuant to New York State charges of possession of a stolen vehicle, driving while intoxicated, and aggravated unlicensed operation of a motor vehicle in the first degree. While incarcerated, Bourdon requested reference materials from the jail's law library in order to prepare, *pro se*, pretrial motions to dismiss the indictment and to be relieved of his current counsel and receive replacement counsel. Defendants denied Bourdon's request for materials, on the grounds that Bourdon was rep-

---

Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the Dis-

trict of Columbia shall be considered to be a statute of the District of Columbia.

**3.** The Sixth Amendment's guarantee of the assistance of counsel, "made obligatory upon the States by the Fourteenth Amendment," *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," U.S. Const. amend. VI, and includes the right to the *effective* assistance of counsel, *see Powell v. Alabama*, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

resented at the time by court-appointed counsel—namely, the Public Defender of Chenango County—from whom Bourdon could request the materials he desired. Defendants, who do not have supervisory authority over court-appointed counsel, adhered to their position when Bourdon, who never requested the materials from his attorney, stated only that he had not heard from his attorney and indicated that he was disappointed with his attorney's services.

Without reference materials from the library, Bourdon filed his *pro se* motions. The state trial court denied the motion to dismiss, finding that the motion was untimely[4] and that Bourdon, rather than defendants, was responsible for the late filing. The court, however, granted Bourdon's motion for new counsel; that motion was not contested by the Public Defender.[5]

Shortly thereafter, on January 24, 1997, Bourdon filed the instant § 1983 lawsuit, claiming in an amended complaint that he had been deprived of his constitutional right of access to the courts when defendants denied his request for reference materials and delayed provision of notary services necessary for Bourdon to file properly his *pro se* motion to dismiss the state indictment against him. On March 6, 2000, on cross-motions for summary judgment, the District Court adopted the report and recommendation of then-Magistrate Judge David N. Hurd[6] that recommended entry of judgment for defendants and dismissal of the complaint.

On Bourdon's appeal from the District Court's order granting summary judgment to defendants and dismissing the complaint, this Court held that the District Court, before ruling in favor of defendants, should have apprised Bourdon, a *pro se* litigant, of the consequences of failing to file a response to defendants' summary judgment motion. Accordingly, in a summary order, *Bourdon v. Loughren*, 7 Fed. Appx. 116, 2001 WL 345138, at *3 (2d Cir. Apr.6, 2001), the order was vacated and the cause remanded to the District Court.

On remand, the parties re-filed cross-motions for summary judgment. Then-Magistrate Judge Gary L. Sharpe concluded that Bourdon's right of access to the courts had not been denied, finding that Bourdon could have asked for an extension of time to move to dismiss the indictment and that the denial of Bourdon's motion to dismiss resulted from Bourdon's inaction, not because Bourdon was delayed access to notary services. The magistrate judge also determined that Bourdon was represented by counsel during all times that he claimed he was denied access to the courts. Accordingly, the magistrate judge recommended that the District Court again grant defendants' motion for summary judgment. On July 14, 2003, the District Court agreed, adopting in full the magistrate judge's report and recommendation and granting summary judgment to defendants. Bourdon timely appealed.

On appeal, Bourdon maintains that defendants' denial of his request for refer-

**4.** Under New York law, Bourdon's motion had to be filed "not more than five days after [Bourdon] ha[d] been arraigned upon the indictment." *See* N.Y. CRIM. PROC LAW § 190.50(5)(c).

**5.** In July 1997, after a jury trial, Bourdon was convicted of two counts of driving while intoxicated and one count of aggravated unlicensed operation of a motor vehicle in the first degree. *See People v. Bourdon*, 255 A.D.2d 619, 619, 681 N.Y.S.2d 615, 615 (3d Dep't 1998).

**6.** To be precise, the District Court accepted the report and recommendation of the magistrate judge "as modified," for reasons not relevant to this appeal.

ence materials regarding his motions to dismiss the indictment and to obtain replacement counsel, the alleged deficiencies in the jail's law library, and the delay in the provision of notary services hindered his efforts to file a timely motion to dismiss and otherwise present his claims and grievances to the state trial court.[7] He asserts: "Had the Defendants provided Plaintiff with legal assistance and research materials his pro se motion to dismiss the indictment would not have been dismissed as untimely, Plaintiff would have argued effectively that his motion was not untimely, that [certain days] should not have been included in the 5 day time limit." Appellant's Br. at 7. He further asserts that when he requested the library materials, he "was without effective assistance of counsel." *Id.* For these reasons, Bourdon claims that defendants deprived him of his constitutional right of access to the courts.

## DISCUSSION

### I.  Standard of Review

We review a grant of summary judgment *de novo*, construing the record in the light most favorable to the non-moving party. *See, e.g., Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.2003).

### II.  Right of Access to the Courts

■ Prisoners, including pretrial detainees, "have a constitutional right of access to the courts," *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *accord Lewis v. Casey*, 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), grounded, as relevant to prisoners, in the constitutional guarantees of equal protection and due process, *see, e.g., Murray v. Giarratano*, 492 U.S. 1, 11 n. 6, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) ("The prisoner's right of access has been described as a consequence of the right to due process of law, and as an aspect of equal protection." (internal citations omitted)); *see also Christopher v. Harbury*, 536 U.S. 403, 415 n. 12, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (observing that, in various civil and criminal cases, the Supreme Court has grounded the right of access to the courts in the Privileges and Immunities Clause of Article IV, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment).[8]  The Supreme Court explained in *Bounds* that this right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828, 97 S.Ct. 1491.  But the Supreme Court has likewise instructed that "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351, 116

---

7.  For example, Bourdon wished to challenge the failure of the grand jury to hear his testimony before indicting him and the validity of his Breathalyzer test results.

8.  The right of access to the courts applies beyond criminal litigation, ensuring that all citizens have "[t]he right to sue and defend in the courts." *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148, 28 S.Ct. 34, 52 L.Ed. 143 (1907).  But the right has particular application to prisoners seeking access to the courts, where they are defending against criminal charges, challenging convictions and sentences, and raising civil rights claims about the conditions of their confinement. *See, e.g., Lewis*, 518 U.S. at 355, 116 S.Ct. 2174; *Bounds*, 430 U.S. at 825, 97 S.Ct. 1491.  Because this appeal presents an access-to-the-courts claim of a prisoner seeking access in order to challenge the charges for which he was incarcerated, we focus on the right as it pertains to prisoners rather than to litigants generally.

S.Ct. 2174. Instead, "[t]he right that *Bounds* acknowledged was the (already well-established) right of *access to the courts*," *Lewis,* 518 U.S. at 350, 116 S.Ct. 2174; *see also id.* at 351, 116 S.Ct. 2174 (" '[M]eaningful access to the courts is the touchstone.' " (quoting *Bounds,* 430 U.S. at 823, 97 S.Ct. 1491)). The point is to provide prisoners with the tools they "need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355, 116 S.Ct. 2174; *see also Bounds,* 430 U.S. at 825, 97 S.Ct. 1491 (stating that the relevant inquiry is whether the inmate has "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts"). To establish a violation, "the inmate ... must ... demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis,* 518 U.S. at 351, 116 S.Ct. 2174.

### III. Analysis

The circumstances of the case before us present the following questions: (1) whether the appointment of counsel can be a valid means of satisfying fully a state's constitutional obligation to provide prisoners with meaningful access to the courts; (2) if so, whether the provision of counsel to satisfy a prisoner's right of access to the courts should be measured in terms of whether that counsel was "effective" under the Sixth Amendment's guarantee of the assistance of counsel; and (3) whether, in the circumstances of this case, the fact of Bourdon's appointed counsel established constitutionally acceptable access to the courts.

### A. Appointment of Counsel as "Meaningful Access to the Courts"

■ As an initial matter, we confirm that the appointment of counsel can be a valid means of satisfying a prisoner's right of access to the courts. Although, before now, we have not addressed directly this precise question, we have indicated in dicta that "the provision of counsel can be a means of accessing the courts" that satisfies a state's constitutional obligation to provide pretrial detainees with access to the courts. *Benjamin v. Fraser,* 264 F.3d 175, 186 (2d Cir.2001) (considering whether prison restrictions on detainees' contact with their attorneys violated the detainees' constitutional rights to counsel and of access to the courts). Moreover, several of our sister circuits already have interpreted appointment of counsel as a valid means of providing pretrial detainees and other prisoners with constitutionally mandated access to the courts. *See, e.g., United States v. Smith,* 907 F.2d 42, 45 (6th Cir. 1990) (holding that "the state does not have to provide access to a law library to defendants in criminal trials who wish to represent themselves" and waive their right to counsel); *Peterkin v. Jeffes,* 855 F.2d 1021, 1042 (3d Cir.1988) (reading *"Bounds* to hold that the provision of lawyers is one means by which a state may provide prisoners with meaningful access to courts"); *Howland v. Kilquist,* 833 F.2d 639, 643 (7th Cir.1987) (finding that "the trial court's offer of appointment of counsel in [the criminal] proceedings, and the appointment of standby counsel, satisfied any obligation which the state had to provide [the inmate] with legal assistance"); *Love v. Summit County,* 776 F.2d 908, 914 (10th Cir.1985) (concluding that, where detainee had access to his counsel at all times during his incarceration, he "did not show that he was denied access to adequate legal assistance to help him prepare and pursue his claims before the courts or that defendants in any significant way restricted that access"); *Storseth v. Spellman,* 654

F.2d 1349, 1353 (9th Cir.1981) ("Appointed counsel, whether state or court provided, offers a meaningful, and certainly the best, avenue of access to an indigent inmate."); *United States v. Chatman,* 584 F.2d 1358, 1360 (4th Cir.1978) (in a case in which prisoner who elected to proceed without counsel complained of lack of materials in the prison library, concluding that the government had no obligation to provide legal materials and declining to "read *Bounds* to give an option to the *prisoner* as to the form in which he elects to obtain legal assistance"). They have done so with good reason. As the Supreme Court has explained, one form by which authorities can satisfy the right of access to the courts is by "providing prisoners with . . . adequate assistance from *persons trained in the law.*" *Bounds,* 430 U.S. at 828, 97 S.Ct. 1491 (emphasis added). Indeed, the Supreme Court has observed that "the use of full-time staff attorneys, working . . . as part of public defender or legal services offices," is an "imaginative form[ ]" by which a state can provide prisoners with access to the courts. *Id.* at 831, 97 S.Ct. 1491. Accordingly, today we explicitly hold that the appointment of counsel can be a valid means of fully satisfying a state's constitutional obligation to provide prisoners, including pretrial detainees, with access to the courts in conformity with the requirements of the Due Process Clauses of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment.[9]

## B. Interpreting *"Adequate Assistance from Persons Trained in the Law"*

Bourdon devotes a significant portion of his brief to allegations that the attorney representing him at the time he sought materials from the jail library was ineffective. For example, Bourdon claims that his calls and "chain of letters" to the Chenango County Public Defender's Office—to find out which attorney had been designated to represent him—were either refused or not acknowledged. Appellant's Br. at 2. He also claims that, once he learned the name of the designated attorney, that attorney never visited Bourdon in the jail, *id.* at 5, despite the attorney's assurances to members of Bourdon's family that he would meet with Bourdon, *id.* at 2–3. Thus, in the context of Bourdon's access-to-the-courts claim—the only claim presented in his complaint[10]—we read the complaint to allege that, as a result of the attorney's alleged ineffectiveness, the provision of that attorney did not satisfy the state's obligation to provide Bourdon with meaningful access to the courts, and that, when defendants denied Bourdon's request for reference materials, they hindered his access to the state trial court and thereby violated his constitutional right of access to the courts. This argument requires us to consider whether any claim of constitutionally acceptable access to the courts through appointed counsel should be measured by reference to the constitutional standard of effective assistance of counsel. In other words, we must consider the

9. In the present case, Bourdon did not seek to represent himself, as he would have had the right to do under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Although Bourdon expressed dissatisfaction with, and sought the removal of, his attorney, he also sought the appointment of new counsel. We express no view as to whether the appointment of counsel could

adequately protect the right of access to the courts of a defendant who has, in accordance with *Faretta,* exercised his Sixth Amendment right to waive counsel and conduct his own defense.

10. As previously noted, an ineffectiveness claim is not before us. *See* text at page 90, *ante.*

meaning of the phrase *"adequate assistance from persons trained in the law,"* as used in *Bounds* to identify one method of providing prisoners access to the courts, *see* 430 U.S. at 828, 97 S.Ct. 1491 (emphasis added).

For several reasons, we are not persuaded that the effectiveness inquiry under the Sixth Amendment's guarantee of the assistance of counsel informs the inquiry relevant to an alleged violation of access to the courts.

We first observe that the two rights— assistance of counsel and access to the courts—do not share a common constitutional source. The right to assistance of counsel—interpreted as the right to *effective* assistance of counsel, *see Powell v. Alabama,* 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932)—is explicitly guaranteed by the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI; *see also Gideon v. Wainwright,* 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (holding that the Sixth Amendment's guarantee of the assistance of counsel "is made obligatory upon the States by the Fourteenth Amendment"). By contrast, the right of access to the courts is grounded not in the Sixth Amendment but in various other constitutional provisions, including the right of all citizens "to sue and defend in the courts." *Chambers v. Baltimore & Ohio R.R. Co.,* 207 U.S. 142, 148, 28 S.Ct. 34, 52 L.Ed. 143 (1907) (relying on the Privileges and Immunities Clause of Article IV); *Christopher v. Harbury,* 536 U.S. 403, 415 n. 12, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (observing that, in various civil and crimi-

nal cases, the Supreme Court has grounded the right of access to the courts in the Privileges and Immunities Clause of Article IV, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment). And the right of access of *prisoners,* as described by the Supreme Court, is rooted in the constitutional guarantees of equal protection of the laws and due process of law. *See Murray v. Giarratano,* 492 U.S. 1, 11 n. 6, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) ("The prisoner's right of access has been described as a consequence of the right to due process of law, and as an aspect of equal protection." (internal citations omitted)).[11]

In light of their different sources, it is not surprising that the two rights have different jurisprudential histories. The two rights usually have been discussed separately. *Compare, e.g., Bounds,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (access to the courts), *and Lewis,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (same), *with Gideon,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (effective assistance of counsel), *and Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (same); *see also Murray,* 492 U.S. at 12, 109 S.Ct. 2765 (relying on *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), to hold that the Constitution does not require appointment of counsel in post-conviction proceedings, and declining to permit the extension of [the right-of-access] holding

---

**11.** We focus on the *prisoner*'s right of access to the courts because, as explained in "Discussion," Part II, *ante,* the right has particular application to prisoners, such as Bourdon, who seek access to a court in order to defend against the charges for which they are incarcerated or to challenge the conditions of their confinement. *See also* note 8, *ante.*

[in *Bounds* ] to partially overrule . . . *Finley*).

In addition, the two rights, although both concerned generally with assuring that criminal defendants receive a fair trial, protect that fundamental right in different ways and apply to different categories of persons. The right to effective assistance of counsel, as the Supreme Court explained more than seventy years ago, is the right of a defendant to be heard on the criminal charges against him—and "[t]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." *Powell*, 287 U.S. at 68–69, 53 S.Ct. 55. "[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." *Gideon*, 372 U.S. at 344, 83 S.Ct. 792. For these reasons, "[a]n accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair," *Strickland*, 466 U.S. at 685, 104 S.Ct. 2052, and indigent persons accused of a crime must be provided appointed counsel, *Gideon*, 372 U.S. at 344, 83 S.Ct. 792. But the Sixth Amendment only applies to a defendant's trial and first appeal as of right, not to appeals afforded on a discretionary basis, collateral proceedings, or civil proceedings such as civil rights claims challenging prison conditions. *See Pennsylvania v. Finley*, 481 U.S. 551, 555–57, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987).

The prisoner's right of access to the courts, while also concerned with assuring that trials are fair, offers a different means of achieving that fundamental objective, and it attaches to a different category of prisoners, as well as to different types of proceedings. The right of access to the courts requires that prisoners defending against criminal charges or convictions (either directly or collaterally) or challenging the conditions of their confinement—*i.e.*,

not only defendants on trial and at their first appeal as of right, as with the Sixth Amendment right to counsel—not be impeded from presenting those defenses and claims for formal adjudication by a court. *See Bounds*, 430 U.S. at 823, 97 S.Ct. 1491; *accord Lewis*, 518 U.S. at 351, 116 S.Ct. 2174. So, for example, "in order to prevent 'effectively foreclosed access,' indigent prisoners must be allowed to file appeals and habeas corpus petitions without payment of docket fees," and "[s]tates must provide trial records to inmates unable to buy them." *Bounds*, 430 U.S. at 822, 97 S.Ct. 1491. To provide the access constitutionally mandated, a state may be required to offer affirmative assistance to prisoners, but that assistance is not prescribed in narrow or specific terms or limited in form. For example, the assistance of an attorney, as we have concluded above, is a permissible and sufficient means of satisfying the right of access to the courts, but it is not a necessary or exclusive means of doing so—in contrast to the Sixth Amendment right to the effective assistance of counsel, where the assistance of an attorney *is* necessary (although not sufficient) for satisfaction of the right.

We recognize that both rights impose a certain minimum standard of "assistance." The Sixth Amendment right to counsel guarantees "effective assistance," *see, e.g., Strickland*, 466 U.S. at 686, 104 S.Ct. 2052, and the right of access to the courts guarantees that access provided by persons trained in the law be "adequate assistance," *see, e.g., Bounds*, 430 U.S. at 828, 97 S.Ct. 1491. But these standards, when read in context and in light of the differences noted above, are not synonymous. The phrase "effective assistance of counsel," *see, e.g., Strickland*, 466 U.S. at 686, 104 S.Ct. 2052, means, quite plainly, that the defendant is entitled to assistance by a competent attorney who, through his or

her representation of the defendant, "plays the role necessary to ensure that the trial is fair," *id.* at 685, 104 S.Ct. 2052. By contrast, the phrase "adequate assistance from persons trained in the law," *Bounds,* 430 U.S. at 828, 97 S.Ct. 1491, must be read in the context of the right to which it pertains: the right of access to the courts.

■ For guidance in interpreting "adequate assistance from persons trained in the law," we turn to *Bounds,* where the Supreme Court, in describing one means by which a state can give prisoners access to the courts, first employed that phrase. *See id.* In *Bounds,* the Supreme Court considered whether the district court had erred in approving a library plan for the state prisons of North Carolina as a means of satisfying the inmates' constitutional right of access to the courts. *Id.* at 818–21, 97 S.Ct. 1491. The state argued that it should not be required to expend funds to implement the plan or otherwise affirmatively provide access so long as the state was not restricting inmates' communication with "jailhouse lawyers" who could assist with an inmate's filings.[12] *Id.* at 823, 97 S.Ct. 1491.

*Bounds* rejected the state's position and agreed with the district court's approval of the library plan. More importantly for our purposes, *Bounds* acknowledged that, while library service is one valid means of assuring access to the courts, constitutionally acceptable access can be provided alternatively by "adequate assistance from persons trained in the law," *id.* at 828, 97 S.Ct. 1491—which the Court also described as "some degree of professional or quasi-professional legal assistance," *id.* at 829, 97 S.Ct. 1491; *see also id.* at 831, 97 S.Ct. 1491 (again using "professional or quasi-professional legal assistance" as im-

plicitly synonymous with "adequate assistance from persons trained in the law"); *id.* at 833, 97 S.Ct. 1491 (using "trained legal advisors" to describe "adequate assistance from persons trained in the law"). And to demonstrate the "many imaginative forms" of constitutionally acceptable legal assistance from persons trained in the law, the Court set forth several examples:

Among the alternatives are the training of inmates as paralegal assistants to work under lawyers' supervision, the use of paraprofessionals and law students, either as volunteers or in formal clinical programs, the organization of volunteer attorneys through bar associations or other groups, the hiring of lawyers on a part-time consultant basis, and the use of full-time staff attorneys, working either in new prison legal assistance organizations or as part of public defender or legal services offices.

*Id.* at 831, 97 S.Ct. 1491. Each of these various forms of assistance—including assistance other than formal provision of legal services by an attorney—would be provided or supervised by persons qualified and trained in legal matters, in contrast to assistance from legal amateurs and laypersons, such as "jailhouse lawyers," who have no formal legal training or qualifications. And yet, despite the focus on trained and qualified assistance (relevant also to the Sixth Amendment's guarantee of the assistance of counsel), notably absent from the Court's discussion is any mention of the *effectiveness* of the assistance.

Finally, the Supreme Court has emphasized that *Bounds* "guarantee[d] no particular methodology but rather the conferral of a capability—the *capability* of bringing

---

12. "Jailhouse lawyers," also called "inmate writ writers," are prisoners who assist other prisoners on applications for the writ of habe-

as corpus and other legal matters. *See Bounds,* 430 U.S. at 823, 97 S.Ct. 1491.

contemplated challenges to sentences or conditions of confinement before courts." *Lewis,* 518 U.S. at 356, 116 S.Ct. 2174 (emphasis added). In *Lewis,* the Court further stated: "When any inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected ..., because this capability of filing suit has not been provided, he demonstrates that the State has failed to furnish '*adequate* law libraries or *adequate* assistance from persons trained in the law.'" *Id.* (quoting *Bounds,* 430 U.S. at 828, 97 S.Ct. 1491).

Based on all of these factors, we conclude that the term "adequate" modifying "assistance from persons trained in the law" does not incorporate the effectiveness inquiry pertinent to the Sixth Amendment but instead refers to the capability of qualified and trained persons—rather than legal amateurs and laypersons—to provide, in dispensing legal assistance, access to the courts. *See Storseth v. Spellman,* 654 F.2d 1349, 1353 (9th Cir.1981) ("Appointed counsel, whether state or court provided, offers a meaningful, and certainly the best, avenue of access to an indigent inmate."). Because attorneys, by definition, are trained and qualified in legal matters, when a prisoner with appointed counsel claims that he was hindered by prison officials in his efforts to defend himself or pursue other relevant legal claims, he must show that, on the facts of his case, the provision of counsel did not furnish him with the capability of bringing his challenges before the courts, not that he was denied effective representation in the court. *See Schrier v. Halford,* 60 F.3d 1309, 1313–14 (8th Cir.1995) ("[T]he term 'adequate' as used in *Bounds* to modify 'assistance from persons trained in the

law,' refers not to the effectiveness of the representation, but to the adequacy of the prisoner's access to his or her court-approved counsel or other law-trained assistant."); *Love v. Summit County,* 776 F.2d 908, 914 (10th Cir.1985) (concluding that, where detainee had access to his counsel at all times during his incarceration, he "did not show that he was denied access to *adequate legal assistance* to help him prepare and pursue his claims before the courts or that defendants in any significant way restricted that access" (emphasis added)).[13]

### C. Bourdon's Claim

With these principles in mind, we return to the facts of this case. At the time Bourdon requested reference materials, he was represented by a court-appointed attorney. Bourdon presents no evidence to suggest, much less establish, that prison authorities denied ·or restricted Bourdon's access to his attorney or otherwise hindered Bourdon's efforts to pursue his claims in state court when Bourdon was represented by an attorney on those claims. *See Wolfish v. Levi,* 573 F.2d 118, 133 (2d Cir.1978) (affirming remedial order where "most attorney visits were made in the general visiting rooms during visiting hours—thereby entailing long delays, limiting the attorney's time with his client, and totally vitiating confidentiality"), *rev'd on other grounds by Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Nor does Bourdon allege that his appointed counsel was not capable of bringing before the courts the particular efforts he asserts that he wanted to pursue—namely, a motion to dismiss the indictment against him, a challenge to the

---

**13.** In light of the factual nature of this inquiry—much akin to a prisoner's claim that the provision of a prison law library was nevertheless inadequate—we express no view on whether the appointment of counsel always and conclusively discharges or terminates a state's obligation to provide access to the courts.

grand jury proceeding that resulted in the indictment, and a challenge to the results of his Breathalyzer test. In any event, we note that these efforts are perfectly suited to the task of an attorney. Finally, we note that Bourdon never requested the reference materials from his attorney. Accordingly, notwithstanding Bourdon's allegation that his attorney was ineffective, the fact that Bourden was represented by counsel—professional legal assistance provided at the government's expense—and that Bourden has not demonstrated that he was hindered from pursuing a particular legal claim, established constitutionally acceptable access to the courts. *See Lewis*, 518 U.S. at 351, 116 S.Ct. 2174 ("Insofar as the right vindicated by *Bounds* is concerned ... the inmate must ... demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.").

In reaching this conclusion, we do not overlook Bourdon's contention that, when he sought materials from the jail's law library, defendants may have had some notice of Bourdon's view that his attorney was ineffective,[14] as a result of Bourdon's requests and his expressions of dissatisfaction with his attorney.[15] Nevertheless, this alleged notice to defendants, in the circumstances before us, does not alter our view that the state satisfied its obligation when it appointed counsel for Bourdon. A contrary conclusion would amount to imposing a requirement on prison officials to determine, based on a detainee's expressions of dissatisfaction, whether an attorney was effective or not—a technical and burdensome legal judgment that is wholly inappropriate for prison officials to make, or for courts to impose upon them.

## CONCLUSION

For the foregoing reasons, we conclude that

(1) the appointment of counsel is one means by which a state can fulfill its obligation to give prisoners access to the courts;

(2) the phrase "adequate assistance from persons trained in the law," as used in *Bounds* to identify one means of providing access to the courts, does not incorporate the effectiveness inquiry pertinent to the Sixth Amendment right to counsel;

(3) the phrase instead refers to the capability of persons qualified and trained in legal matters, such as attorneys, to bring a prisoner's legal claims before the courts; and

(4) on the facts of this case, Bourdon's appointed counsel afforded him meaningful and constitutionally acceptable access to the courts for his challenges to the state criminal charges brought against him.

Accordingly, the order of the District Court is hereby AFFIRMED.

OAKES, Senior Circuit Judge, concurring.

I concur in affirming the grant of summary judgment for the defendants on the lone ground that Bourdon has failed to demonstrate sufficient injury or prejudice by the denial of access to establish the requisite standing for a claim under 42 U.S.C. § 1983.

However, I write separately to voice my disagreement with the breadth of the rule announced in the majority's decision and applied to the particular circumstances of

---

**14.** We use "ineffective" in the ordinary sense of the word and not as it is used in the context of the Sixth Amendment right to assistance of counsel. As noted above, the question of counsel's "effectiveness" under the Sixth Amendment is not relevant to our access-to-the-courts inquiry.

**15.** Although we note that Bourdon has repeatedly claimed dissatisfaction with his attorney, we intimate no view on the attorney's effectiveness.

this case. While I agree that "the provision of counsel can be a means of accessing the courts," as we recognized in *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001), I cannot agree that it is a means of "*fully* satisfying a state's constitutional obligation to provide prisoners, including pretrial detainees, with access to the courts." Decision at page 11 of majority opinion (emphasis added). There may be other aspects of the right of access that a state may not constitutionally obstruct despite the provision of counsel. Indeed, in *Benjamin v. Fraser*, when considering impediments to pre-trial detainees' ability to visit with counsel, we recognized that a state could not " 'unjustifiably obstruct the availability of professional representation *or other aspects of the right of access to the courts.*' " *Benjamin* 264 F.3d at 187, 188 (emphasis added) (quoting *Procunier v. Martinez*, 416 U.S. 396, 419, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) and determining that "both the due process right of access to the courts and the Sixth Amendment right to counsel are implicated," and that there was no error in measures ordered to remedy undue delays associated with attorney visits). *See also Lane v. Brown*, 372 U.S. 477, 480–81, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963) (holding that the state could not deny an indigent criminal appellant a transcript to appeal pro se from the denial of a writ of error coram nobis, or permit that the appellant, "at the will of the Public Defender, be entirely cut off from any appeal at all").

Nor can I agree with the majority's holding that a state's affirmative obligation to provide access to the courts can be measured without reference to the Sixth Amendment's guarantee of effective assistance of counsel, or that the mere fact of appointed counsel affords meaningful and constitutionally acceptable access to the courts. A defendant whose counsel fails to meet the minimum constitutional standards of effectiveness is not represented at all, and to deny that defendant all other means of communicating with the court most certainly is a deprivation of constitutional proportions, implicating not only the constitutional right of access, but also the Sixth Amendment right to a defense. "[O]ne of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense." *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir.1978) (cited in *Benjamin*, 264 F.3d at 185).

While a defendant does not necessarily have a constitutional right to hybrid representation, I do not believe that the state may constitutionally bar a defendant represented by ineffective counsel from meaningfully accessing the court *in propria persona* in order to preserve his right to an effective defense at such a critical stage of the proceedings.

A defendant who has chosen to defend against charges with the assistance of appointed counsel certainly "surrenders the right to make the ultimate decision on a wide variety of matters." *Ennis v. LeFevre*, 560 F.2d 1072, 1075 (2d Cir.1977). "Of course, if counsel failed to press an argument that had obvious merit, *United States ex rel. Maselli v. Reincke*, 383 F.2d 129 (2d Cir.1967); or if he failed to act as an advocate on petitioner's behalf, *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); or if counsel failed to obtain an adequate record, *Entsminger v. Iowa*, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967); or if he failed to make a conscientious investigation, *United States ex rel. Brown v. Warden*, [417 F.Supp. 970, 974 (N.D.Ill.1976) ], then petitioner may have been denied the effective assistance of counsel, and that issue may be raised notwithstanding the otherwise binding nature of the challenged decision

made by counsel." *Ennis,* 560 F.2d at 1076 (parallel citations omitted).

Judge Gurfein, concurring in *Ennis,* stated: "Nor would I agree to a general statement that once a defendant has a lawyer, *everything* and *anything* he asserts must fall on deaf ears. While it is generally true that one cannot have a lawyer and act *pro se* at the same time, there may be exceptions of constitutional magnitude which should not be foreclosed by generalization." 560 F.2d at 1077 (emphasis in original).

In this case, Bourdon has not demonstrated sufficient injury to establish a claim under § 1983. But, in other circumstances, the rule announced in today's decision could permit a state to foreclose a defendant from raising claims of constitutional magnitude by interposing the fact of representation, regardless of its effectiveness. Therefore, I concur only in the result of today's decision.